Roy M. WALKER, Appellant,

v.

STATE of Indiana, Appellee.

No. 2–877A325.

Court of Appeals of Indiana, Fourth District.

Dec. 31, 1980.

---

Kenneth T. Roberts, Wilson, Coleman & Roberts, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Defendant–appellant Roy Walker appeals his jury conviction of two counts of conspiracy to commit theft by deception under IC 1971, 35–1–111–1 (Burns Code Ed.).[1] Walker was retained along with the alleged co conspirator, Bernard Flinn, to aid the alleged victims in obtaining personal loans. In each count of the information they were charged with obtaining $1,500 by deception in that they created the false impression the "money was necessary to secure" a loan for

each party. We conclude the evidence was insufficient to support either conviction.

We now consider the evidence most favorable to the State in support of the charges. Count I of the indictment[2] concerned a transaction with Maurus and Margaret Smithmeyer. In June, 1975 the Smithmeyers were trying to obtain 90% financing for the purchase of real property (28 acres including a house) valued at $55,000. Maurus responded to Flinn's newspaper advertisement concerning help in obtaining loans. Flinn asked for $300 in advance for services and the Smithmeyers agreed to pay the money provided it would be refunded if a loan was not obtained. A written contract in that regard was signed by Flinn and Maurus.[3] The next day Flinn approached Maurus stating he had contacted another person who wanted to handle the loan, that the loan was "ready to start" but that Flinn needed another $1,200. Flinn took Maurus to Walker's office where the request for the additional $1,200 was repeated by Flinn and Walker. Initially, Maurus refused to pay the extra amount,

1. "IC 35–1–111–1. Any person or persons who shall unite or combine with any other person or persons for the purpose of committing a felony, within or without this state; or any person or persons who shall knowingly unite with any other person or persons, body, association or combination of persons, whose object is the commission of a felony or felonies, within or without this state, shall, on conviction, be fined not less than twenty–five dollars [$25.00] nor more than five thousand dollars [$5,000], and imprisoned in the state prison not less than two [2] years nor more than fourteen [14] years."
Repealed, effective October 1, 1977. Replacement: Ind. Code 35–41–5–2.

2. Count I of the indictment reads:
"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that BERNARD P. FLINN and ROY M. WALKER on or about the 24th day of July, A.D. 1975, at and in the County of Marion and in the State of Indiana, did unlawfully, knowingly and feloniously unite, combine, conspire, confederate and agree to and with each other for the object and purpose and with the unlawful and felonious intent to commit a felony, to-wit: O.A.P.A. (Theft), to-wit: to obtain, by deception, control over the property of MAURUS and MARGARET SMITHMEYER, to-wit: Money, the value of $1,500.00 with the intention to

deprive the said MAURUS and MARGARET SMITHMEYER of the use and benefit of said property *by knowingly creating and confirming to the said MAURUS and MARGARET SMITHMEYER the false impression that said money was necessary to secure for the said MAURUS and MARGARET SMITHMEYER a loan of money,* all of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana." (Emphasis added.)

3. The contract in pertinent part reads:
"CONTRACT
Flinn Investment Inc.
"Be it known that Maurus Smithmeyer, acting as representative for ———————, does hereby authorize Flinn Investment Inc., to seek a financial institution for the purpose of a Loan. In consideration of services to be rendered, is as follows, the sum of $300.00 (Three Hundred Dollars), to be paid at the execution of this Contract.

. . . .

This contract is not a GUARANTEE of a LOAN!
Signed this 22 Day of June, 1975.
X Maurus Smithmeyer
Bernard P. Flinn
Remarks; $300.00 To be refunded if loan is not approved.

insisting that the original $300 be used to obtain whatever was necessary to process the loan. Several weeks later Walker indicated that a loan at the interest rate stipulated was available conditioned on the approval of the Smithmeyers' credit and, further, on the appraised value of the property. Thereafter, the credit of the Smithmeyers "checked out" and they paid the $1,200 to Flinn by check.

Maurus testified at trial that he understood the $1,200 to be for Flinn and Walker's fees for services in obtaining the loan plus expenses incurred for an appraisal and survey. There was no evidence that either Flinn or Walker represented the money was to "guarantee" a loan or was for any reason other than their fees and expenses. On the back of the $1,200 check was the condition that the entire $1,500 paid was to be refunded if the loan was not "approved" for any reason. This endorsement read as follows:

"Full amount of this check of twelve hundred dollars ($1,200), plus previous payment of three hundred dollars ($300) of check number five–twenty- one (521), to be entirely refunded if mortgage is not approved for any purpose on the property of Rural Route One (1), Box two–nine–three (293), Trafalgar, Indiana. The only additional money to be paid is the closing costs of not less than three hundred dollars ($300), nor more than seven hundred dollars ($700)."

The check for $1,200 was paid on July 24, 1975. On July 25 Walker indicated by letter he had reviewed the loan application and on the basis of his review was prepared to arrange a 90 percent conventional mortgage loan through one of his institutional investors, "[subject] to an appraisal equal to or in excess of the sale price." The letter indicated an appraiser had been engaged to perform the appraisal and suggested that

Walker anticipate approximately three weeks' processing time from the date of receipt of all the required documentation to final closing. Mr. Smithmeyer testified everything "was all right," including the appraisal, and the "package . . . was supposed to be coming from Chicago." Similarly, a friend of Smithmeyer's, a finance adjuster, stated he had been present when Walker indicated the loan was on its way. Numerous closing dates for the loan were set and cancelled by Walker, allegedly because the "loan package" had not arrived. The evidence further showed that Mr. Smithmeyer and Walker met about the middle of August, 1975, and that at that time Walker was still optimistic about the loan. However, the day before the loan was supposed to close, Walker informed him it had not been approved, and the loan was cancelled. Mr. Smithmeyer did not know what had kept the loan from closing. He stated, "I really don't recall the reason, whatever, but just that it didn't, one of those things that didn't work out." In this regard, we observe that one of the realtors involved in the Smithmeyer transaction stated that before Flinn and Walker were employed, he had unsuccessfully contacted about eight institutions regarding financing.

After a number of telephone calls and trips to Walker's office, the Smithmeyers requested a refund of their money from Walker. Walker refunded $650 stating he was retaining the $100 for the survey and appraisal of the land, and that the remainder could be obtained from Flinn. Evidence disclosed that Walker did not pay for the survey at a later date, explaining that not enough money remained from his share of the appraisal. Flinn refused to return any money to the Smithmeyers.

Count II charged Flinn and Walker with conspiring to defraud Steven Mowrer[4]

---

4. Count II of the indictment reads:
"The Grand Jurors aforesaid upon their oaths aforesaid, do further say and charge that BERNARD P. FLINN and ROY M. WALKER, on or about the 10th day of July, 1975, A.D., at and in the County of Marion and in the State of Indiana, did unlawfully, knowingly and feloniously, unite, combine, conspire, confederate and agree to and with each other for the object and purpose and with the unlawful and felonious intent to commit a felony, to wit: O.A.P.A. (Theft), to wit: to obtain by deception, control over the property of STEVEN MOWRER, to–wit:

again by knowingly confirming the false impression that a sum of money was necessary to obtain a loan. However, it is significant to note here that the State's evidence primarily concerned the events surrounding the attempts by Richard Mowrer, Steven's father, to obtain a loan. Richard responded to Flinn's newspaper ad while seeking a $40,000 loan for his used car business. During an initial interview, Flinn indicated to Richard that he did not think there would be any problem in obtaining the loan. Several days later Richard signed a contract for $300 with Flinn similar to the one executed in the Smithmeyer transaction.[5] Approximately two weeks later, Flinn contacted Richard and stated that he needed another $1,500 to process the loan and cover expenses. Flinn stated that if the expenses did not come to $1,500, the difference would be refunded. It was at this time that Steven, Richard's son, entered the picture. When Steven was requested by Robert to provide the $1,500, he obtained a loan on his motorcycle and along with his father, personally delivered the check to Flinn. This was the first contact between Flinn and Steven and testimony did not reveal any representations regarding the transaction made by Flinn either directly to Steven or to Richard in Steven's presence. Flinn then sent Richard to see Walker who arranged a business loan through Union Financing in Indianapolis. Union required the loan to be co-signed and Richard responded by signing with his wife and his parents. However, he cancelled the loan within the three day "cooling off period" provided by the Uniform Consumer Code (Ind. Code 24–4.5–5-.204) when he realized the loan collateral was his parents' farm rather than his business inventory. Richard testified that the mistake on the collateral was caused by a misrepresentation made by Union Financing, not Walker. Three or four weeks later, Walker sent Richard to another loan company for financing but he was unable to process the loan within time to prevent his business from failing. When Richard approached Walker about refunding the $1,500, Walker disclaimed any knowledge that the money had been paid to Flinn.

## DECISION

■ In order to prove the offense charged, the State must have sufficient evidence that Flinn joined with Walker for the purpose of committing the felony of theft by deception, their intended victims being the Smithmeyers and *Steven* Mowrer. Both counts of the indictment allege Walker and Flinn conspired for the purpose of obtaining money from the Smithmeyers and Steven Mowrer by knowingly creating the false impression the payments were necessary to secure a loan of money. In this regard we note that while the underlying felony need not be successfully accomplished to prove such conspiracy, the State must show the completion was the conspirator's purpose. *Hutcheson v. State* (1963) 244 Ind. 345, 192 N.E.2d 748.

Since the underlying felony in the instant case is theft by deception, our analysis first observes the relevant language of IC 1971,

---

[sic]: Money, the value of $1,500.00 with the intention to deprive Steven Mowrer of the use and benefit of said property *by knowingly creating and confirming to the said STEVEN MOWRER the false impression that the said money was necessary to secure for the said STEVEN MOWRER*, a loan of money, all of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana." (Emphasis added.)

**5.** The contract in pertinent part reads:
"CONTRACT
Flinn Investment Inc.

Be it known that <u>Richard W. Mowrer</u>, acting as representative for _____, does hereby authorize <u>Flinn Investment, Inc.</u>, to seek a financial institution for the purpose of a Loan. In consideration of services to be rendered, is as follows, the sum of $300.00 (Three Hundred Dollars), to be paid at the execution of this Contract.
... This contract is not a GUARANTEE of a LOAN!
Signed this <u>19</u> Day of <u>June</u>, 19<u>75</u>
X <u>Richard W. Mowrer</u>
<u>Bernard P. Flinn</u>
Remarks: $300.00 Refundable if loan is not approved.

35–17–5–3 (Burns Code Ed.)[6] which provides that:

"A person commits theft when he

(1) knowingly

. . . . .

(b) obtains by deception control over property of the owner . . . ; and

(2) either:

(a) intends to deprive the owner of the use or benefit of the property; . . . ."

Significantly, IC 1971, 35–17–5–13(3) (Burns Code Ed.) defines "deception" to include the act of "knowingly to: (a) create or confirm another's impression which is false and which the actor does not believe to be true . . . ."

In addition, before considering the relevant evidence presented to the trial court in support of the particular charges in the instant case, we further pause to enumerate the well–established essential elements necessary to constitute a *conspiracy*. These are summarized in *Briscoe v. State*, (1979) Ind.App., 388 N.E.2d 638, 646 (*quoting Mattingly v. State*, (1957) 237 Ind. 326, 338, 145 N.E.2d 650, 656) as follows:

" 'In order to be a conspiracy there must be an intelligent and deliberate agreement to commit the offense charged. It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to do the acts and commit the offense, though the agreement is not manifest by any formal words. Concurrence of sentiment and co–operative conduct in an unlawful and criminal enterprise are the essential ingredients of criminal conspiracy. There must be an agreement and there must be evidence to prove the agreement directly, or such a state of facts that an agreement may be legally inferred. Conspiracies cannot be established by a mere suspicion. Evidence of mere relationship or association between the parties does not show a conspiracy. We recognize also that "Participation in criminal conspiracy need not be proved

by direct evidence but common purpose and plan may be inferred from development and collocation of circumstances." *Taylor (Bryant) v. State* (1956) 235 Ind. 126, 131, 131 N.E.2d 297, 299. See also: *Mattingly v. State* (1957), 236 Ind. 632, 142 N.E.2d 607.' "

*See also Robertson v. State* (1952) 231 Ind. 368, 370, 108 N.E.2d 711–12. Where the various transactions and circumstances surrounding them do not disclose a common purpose and plan to commit the felony as charged, it necessarily follows that a conspiracy conviction based on such inconclusive evidence must have been founded on speculation, guess or mere suspicion, and not upon any substantial evidence. *De-Vault v. State* (1970) 254 Ind. 546, 261 N.E.2d 232; *Hutcheson v. State, supra.*

With the foregoing in mind, we conclude that while the evidence before us does establish that Flinn and Walker were associated together in obtaining loans for the Smithmeyers and Richard Mowrer (not Steven), it is further apparent there was no evidence, direct or otherwise, of the unlawful object charged in the indictment.

Our analysis first addresses the charge and the evidence in support thereof with respect to Count II, the transaction involving the Mowrers, since in that instance the factual support for the charge is most obviously deficient. Taking all of such evidence and reasonable inferences therefrom into account, it is undisputed that any association of, agreement between, or representations by Flinn and Walker with respect to Count II occurred or were made as part of their direct relationship with Richard Mowrer, the father of the alleged victim Steven Mowrer, in efforts to obtain a loan for Richard. In this context we note that although the alleged representations charged in the indictment claim the money was necessary to secure Steven Mowrer a loan of money, it was in fact Steven's own understanding (uncontroverted by any other evidence) that money was needed from him "for processing a loan for my father,"

---

**6.** This statute and IC 1971, 35·17·5·13(3) (Burns Code Ed.), *supra*, and were replaced by Ind. Code 35 43 4 2 and Ind. Code 35 43 4 1 respectively.

and not for Steven. A complete stranger to the basic transaction, Steven Mowrer was apparently only a third party from whom Richard Mowrer obtained money to enable Richard to employ Flinn and Walker. Thus, the only conclusion which could reasonably be derived from the evidence was that there was no agreement of any kind to secure a loan for Steven; while the evidence may arguably have been probative of a different charge, it clearly did not support the allegation which was made.

We find instructive in this regard the reasoning of our Supreme Court in *Crouch v. State*, (1951) 229 Ind. 326, 97 N.E.2d 860, a false pretenses case in which the defendant was charged with obtaining money from a husband and wife for the purchase of a residential lot under the pretense that the defendant was the owner of the property, when in fact he was not. In that case, the undisputed evidence was that although the husband had been deceived by such false assertion, there was no evidence that any representation had been made to the wife, or that she was aware of any. In such circumstances, the Court concluded:

> "This court has held that a failure to prove a material allegation descriptive of the offense is fatal. *Foreman v. State* (1929), 201 Ind. 224, 167 N.E. 125. The proof as to the person or persons to whom the false pretense was made must correspond to the allegations in the indictment. 35 C.J.S. False Pretenses § 49d, p. 702. There was a complete failure of proof of material allegations descriptive of the offense by the failure to prove that the representation was made to Ina F. Egelhoff, and the further failure to show that she relied upon and was deceived by the false representation. *Compton v. State, supra; McCrann v. State* (1920), 189 Ind. 677, 683, 128 N.E. 848. The failure to prove the material allegations descriptive of the offense as to both Harry A. and Ina F. Egelhoff was error. *Foreman v. State, supra.*"

*Id.* at 335, 97 N.E.2d at 863–64. In the instant case, as in *Crouch*, no representations at all were made to the purported victim, even though theft by deception, like the crime of fraud, requires a showing that the alleged victim received and was misled by false representations.[7] *See Yeary v. State*, (1972) 258 Ind. 587, 283 N.E.2d 356; 14 I.L.E. *Fraud* § 21 (1959). Rather, it appears that Steven merely attempted to facilitate the loan transaction for Richard, and that, in fact, a loan was obtained for Richard, although he chose not to accept its terms. There clearly was no evidence to support Count II.

We further conclude the evidence supporting Count I involving the Smithmeyer transaction, was similarly deficient, in that the State failed to demonstrate a false representation as alleged.

The alleged conspiracy against the Smithmeyers, like that charged regarding Steven Mowrer, involved the alleged representation that $1,500 was "necessary to obtain a loan." Though its charge was inartfully phrased, the State apparently thus contended there was a false assertion by Walker to the effect that if some $1,500 were paid by the Smithmeyers, a loan would be obtained. After examining the record, however, we find no evidence of such a representation that a loan would be obtained. Indeed, the undisputed facts were that neither Flinn nor Walker ever "guaranteed" a loan could be granted, that the contract which Smithmeyer originally signed was explicit on this point, and that by Mr. Smithmeyer's own testimony, he regarded the extra $1,200 which he tendered to be a fee, that is, full payment for services rendered by both Flinn and Walker and for expenses incurred by them on his behalf in obtaining a loan. There similarly was no evidence that Flinn or Walker represented a loan could be obtained at eight or eight and one half percent (as Mr. Smithmeyer requested), or that the land involved would be sufficient collateral for a 90 percent con-

---

7. It might be argued that false representations could be indirectly made as to an agent or even through the public generally by an advertisement. 35 C.J.S. *False Pretenses* § 29 (1960). Such obviously was not the case here.

ventional loan. In fact, Mr. Smithmeyer was aware, based on his past efforts to obtain a loan, that these stipulations would be hard to fulfill, and thus could not be guaranteed.

It is also true, of course, that the parties further provided the fee in question would be refunded to the Smithmeyers if their loan were not "approved," and that in fact they received less than half of it back. Even assuming we could treat this case as one in which there was an immaterial variance between the deception charged and the deception proved, *Pontarelli v. State*, (1931) 203 Ind. 146, 176 N.E. 696, 35 C.J.S. *False Pretenses* § 49, that is, that Walker's deception consisted of falsely promising to refund the Smithmeyers' money, instead of representing the money was necessary to obtain a loan, we still conclude that even on this alternative basis, the evidence was insufficient. Under prior statutes regulating false pretenses cases, it was settled law that the false pretense must be based on a misrepresentation of a past or existing fact and could not be based upon a promise to do something in the future. *Pierce v. State*, (1948) 226 Ind. 312, 79 N.E.2d 903, 14 I.L.E. *False Pretenses* § 1 (1959). However, such was not the case under the statute in effect when Walker allegedly committed his deceptive acts. At that time, IC 1971, 35-17 5-13(3)(f) (Burns Code Ed.) defined deception so as to include knowingly to "promise performance which the actor does not intend to perform or knows will not be performed." However, that statute further provided, with one exception not relevant here, that "*[f]ailure to perform standing alone is not evidence that the actor did not intend to perform or that he knows the promise will not be performed....*" *Id.* (emphasis added). In the instant case, we find no probative evidence to support the conviction over and above the simple failure by Flinn to return his share of the money (or Walker's failure to obtain the return by Flinn), with respect to which we further note that Walker did in fact return all but $100 of his share. While it might be argued that proof of the transaction with the Mowrers is additional evidence against

Walker indicating a common scheme or plan, *Bruce v. State*, (1978) Ind., 375 N.E.2d 1042, we simply observe that on the facts as presented, the two transactions are dissimilar in that, significantly, the Mowrers did in fact obtain a loan, rendering the obligation to refund the fees in that instance highly questionable and a matter for civil, rather than criminal, resolution. In other words, the Mowrer case was not probative evidence establishing a common scheme or plan not to return the fees even though loans were never obtained. Thus, with respect to Count I and the possibility of an immaterial variance, we find the evidence insufficient.

The judgment is reversed, with instructions to enter judgments of not guilty on both counts of the indictment.

YOUNG, P. J., and CHIPMAN, J., concur.