**Thomas R. FADELL, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

**No. 4–1281A208.**

Court of Appeals of Indiana,
Fourth District.

June 21, 1983.

Rehearing Denied July 21, 1983.

---

Thomas R. Fadell, pro se.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

After a jury trial, Thomas R. Fadell was convicted of Theft by Deception, Ind.Code 35–17–5–3(b) (1976), Conspiracy to Commit Perjury in a Voluntary Affidavit, Ind.Code 35–1–111–1, 35–1–90–2 (1976), and four counts of Ghost Employment, Ind.Code 35–22–8–2 (1976). From these convictions, Fadell appeals, raising the following issues:

1. Whether the prosecutors used perjured testimony to secure the conviction for Conspiracy;

2. Whether Fadell was denied a fair trial by the State's failure to provide discovery;

3. Whether the indictment for Theft by Deception was legally insufficient;

4. Whether the jury's finding of specific intent to commit Theft was based upon adequate instructions and sufficient evidence;

5. Whether the court erred in refusing to dismiss the Conspiracy charge where the same conduct had been the subject of a federal prosecution;

6. Whether the court erred in refusing to dismiss either the Ghost Employ-

ment charges or the Theft charge, since Theft is either a lesser included offense of Ghost Employment or an identical offense;

7. Whether the conviction for Conspiracy to Commit Perjury is contrary to law or not supported by the evidence;
8. Whether two of the convictions for Ghost Employment were supported by the evidence;
9. Whether the court erred in refusing Fadell's tendered instruction on the elements of Conspiracy to Commit Perjury;
10. Whether the court erred in refusing Fadell's tendered instruction on the scope of an assessor's discretion;
11. Whether the court erred in refusing Fadell's tendered instruction on witnesses' bias;
12. Whether Fadell was denied a fair trial by the exclusion of women from the jury;
13. Whether the court erred in refusing to discharge Fadell under Ind.Rules of Procedure, Criminal Rule 4(C);
14. Whether Fadell was denied a fair trial by the introduction of misleading waivers, signed by witnesses;
15. Whether Fadell's conviction on two counts of Ghost Employment as to one employee violated the double jeopardy clause; and
16. Whether the court erred in refusing to disqualify a deputy prosecutor who had represented defense witnesses.

We reverse the conviction for Theft by Deception, otherwise affirming the trial court's judgment in all respects.

The facts relevant to this appeal are as follows: Thomas R. Fadell was the Calumet Township Assessor in Lake County, Indiana, from 1959 to 1978. During this period, Fadell also maintained a private law practice and had an interest in a trucking company, a mobile home park, and a sand mining and sales company. Fadell managed these businesses from one office and conducted the assessor's work from another.

Bart Kusmierz was on the payroll of the Township Assessor's Office from March 1, 1973, to June 30, 1973, and during that time received pay of $350.00. Kusmierz was also on the payroll of the Township Assessor's Office from November 11, 1975, to September 15, 1976, and received pay of $7,046.59 for that period of time. Kusmierz was assigned to report for his work at Fadell's private offices, rather than the Assessor's office. During both of his stints working for Fadell, Kusmierz received pay both from the Assessor's office and from Fadell's private companies. Kusmierz's job was managing the trucking company and taking orders for the sand company. Kusmierz testified that he did no assessing work in 1973, and that he was assigned no work for the Assessor's office while on the payroll from November, 1975, to September, 1976.

David Krevitz was on the payroll of the Assessor's office from March 1, 1973 to April 22, 1974 and received $10,804.00 for that period of time. He had begun his employment several years earlier, but his duties began to change around September of 1972, when Fadell moved his business operations to his mobile home complex. After that time, Krevitz's duties were to take directions and orders from Fadell, doing work for the sand and trucking companies, for which he was paid one hundred dollars a week from Fadell's private businesses. Krevitz's other duties included going out for parts for the mobile home operation, getting Fadell's car washed, picking up Fadell's children from school, servicing Fadell's car, taking phone orders from accounts, calling accounts to solicit orders, and going to the sand pits to get trip tickets. During this time, Krevitz remained on the Assessor's office payroll as a full-time employee.

Dan Gligor was on the payroll of the Township Assessor's Office from April 1, 1973 to December 31, 1976 and received $39,665.68 for that period of time. In 1973, Gligor spent about four months working either at the trailer court or at Fadell's private home. His duties included picking

up parts for Fadell's car, helping to build a recreation room, a pier, and some book shelves at Fadell's home, and installing sewer lines and new roadways at the trailer park. Gligor testified that he spent about four months of 1974 doing assessor-related work; that he spent three to four weeks of 1975 doing assessor-related work; and that he did perhaps one month of assessor-related work in 1976.

On January 14, 1977 Gligor was sent to see Fadell at his office. Fadell and another office employee explained that they had prepared an affidavit, which Gligor should sign. The affidavit stated that Gligor's wages from the Assessor's office were not to compensate him for unrelated work. Gligor looked it over and said it was false. Fadell told Gligor that the affidavit was so "You can't testify against me. I can't testify against you". Gligor testified that, although he did not want to sign the affidavit, he reluctantly agreed to do so.

### I.

In attacking the trial court's judgment, Fadell first argues that reversal is required because the prosecutors knowingly used perjured testimony to convict him. Specifically, Fadell contends witness Gligor testified falsely about his affidavit containing the following statements:

That the wages paid to affiant by the Calumet Township Assessor were for services performed by affiant within the scope of his employment as a Deputy Assessor. No portion of my wages paid by the Calumet Township Assessor's Office were to compensate me in any manner for duties not related to the operation of the office of the Calumet Township Assessor.

That I was always assigned duties relating to the operation of said office by my employer or his staff and I performed the duties assigned to me.

That I never received compensation of any kind from the office of the Calumet Township Assessor for the performance of duties not related to the operation of the Assessor's office.

The conspiracy conviction against Fadell was based largely upon Gligor's testimony at trial that he *agreed* with Fadell to sign this document, and that he told Fadell he agreed to do so. Fadell contends that this testimony must have been false because it contradicted Gligor's earlier testimony in a deposition.

■ The knowing use of perjured testimony is fundamentally unfair, and any conviction based on such testimony must be reversed. *Sypniewski v. State,* (1980) Ind., 400 N.E.2d 1122. Confusion and inconsistencies in a witness's testimony, however, are not enough to prove perjury. *Id.* At trial, the prosecutor asked Gligor if he "agreed" to sign the document. Gligor responded, "I told Mr. Fadell after a brief encounter that if it would help the cause, I would sign the document." On cross-examination, Gligor repeated that he had "agreed" to sign the document. To prove these statements were perjured, Fadell points to a deposition taken before trial:

Q. "And that you didn't agree you didn't sit there and agree with Mr. Fadell that "yeah, you and I, we'll go ahead and sign this thing ... but you felt you were being forced to sign it, you didn't voluntarily agree with Mr. Fadell to sign it?"

A. "No, I didn't volunteer to sign it."

Q. You didn't voluntarily agree with Mr. Fadell?

A. I didn't want to willingly sign it. You know how circumstances are.

Although these statements are somewhat inconsistent, such inconsistency alone is not enough to prove that Gligor's testimony at trial was perjured. On the contrary, Gligor's trial testimony was substantially consistent with his earlier statements, indicating that Gligor did not want to sign the false document, but did so at Fadell's urging out of fear of being fired. Other contradictions in Gligor's testimony pointed out by Fadell likewise fail to establish any perjury. Fadell is not entitled to reversal on this basis.

## II.

■ Fadell next contends that he was denied a fair trial when the State failed to provide discovery as ordered and suppressed *Brady* material. The State must disclose to a criminal defendant, on request, any material that is exculpatory or affects the credibility of a witness, and is known to the prosecution. *Brady v. Maryland,* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Here, Fadell claims the prosecutors failed to disclose contradictory statements .made to them by Gligor, which might have affected his credibility. Applying the three-tier analysis explained in *Richard v. State,* (1978) 269 Ind. 607, 382 N.E.2d 899, *cert. denied,* (1979) 440 U.S. 965, 99 S.Ct. 1515, 59 L.Ed.2d 781, we note that these disputed statements did not prove any perjury by Gligor;[1] but Fadell *had* specifically requested a copy of "relevant statements" of all State witnesses. Thus, Fadell's conviction must be reversed if the State withheld statements that might have affected the outcome of his trial. *Richard, supra,* at 613, 382 N.E.2d at 903 (citing *United States v. Agurs,* (1976) 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342). Gligor's alleged statements to the prosecutors clearly would not have done so. Fadell's attorney cross examined Gligor at length about inconsistencies between his prior statements and his testimony at trial. Evidence of additional inconsistent statements by Gligor would have been merely cumulative. Reversal is not warranted on this basis.

■ Furthermore, Fadell has not shown any reversible error in the State's alleged failure to provide non-*Brady* discoverable materials under the pre-trial discovery order. Generally, "the proper remedy for the State's failure to comply with a discovery order is a continuance, unless the State's failure to produce is so misleading or demonstrates such bad faith that exclusion of the evidence is the only way to preserve a defendant's right to a fair trial." *Riley v. State,* (1982) Ind., 432 N.E.2d 15, 18. In this case, Fadell did not object to any evidence at trial based on the State's failure to disclose the evidence to Fadell before trial under the discovery order. Fadell at no point sought a continuance to remedy the State's alleged violation of the order. Further, Fadell has made no showing that the State's misconduct denied him a fair trial. Thus, by not seeking a continuance, Fadell waived any error in the use of the disputed evidence.

## III.

■ Fadell also claims the indictment against him for Theft by Deception was insufficient, so that the court erred in failing to dismiss the Theft charge against him. The indictment alleged that Fadell induced the Lake County Council and Board of Commissioners to pay compensation "to deputies and employees" of the Calumet Township Assessor (Fadell), and that Fadell knew these "deputies and employees" were not assigned duties in the Assessor's office, since Fadell specifically assigned them other duties. Fadell claims that, because it did not identify the "deputies and employees" involved, this indictment was not stated with sufficient certainty. Generally,

[a]n indictment or affidavit need only be so certain and particular as to enable the accused, the court and the jury to determine the crime for which conviction is sought. The defendant must be given sufficient information to enable him to

---

1. Fadell claims that the prosecutors *did* have evidence of perjury that was not disclosed to him. This is based on a statement by Gligor after the trial:

 Q: Did [the prosecutor] ask you are these statements true?
 A: Some, yeah. He must have asked me something like that.
 Q: And what did you tell him?
 A: Well, as near as I can remember. I don't know.

 Q: Well, *did you tell him no, some of these statements are not true?*
 A: *I probably did, yes.* I probably did. I can't recollect right now. It's been a long time.
 Q: Do you have any idea which statements you told him were not true?
 A: No.
 (Emphasis added). This evidence, however, is inadequate to support a finding that the prosecutor suppressed evidence of perjury.

prepare his defense and to assure that he will not twice be put in jeopardy for the same crime.

*Gubitz v. State,* (1977) 172 Ind.App. 343, 355, 360 N.E.2d 259, 266–67. Further, "an accused has a right to require that a crime alleged against him be charged with sufficient certainty to enable him to anticipate the proof which would be adduced against him...." *Bickel v. State,* (1978) 176 Ind. App. 342, 343, 375 N.E.2d 274, 275. Thus, although a person collaterally connected with the crime charged need not be named, an indictment must allege the name of persons whose identity "is essential to a proper description of the offense charged...." *Robinson v. State,* (1953) 232 Ind. 396, 398, 112 N.E.2d 861, 862.

 In this case, the names of the "deputies and employees" involved were "essential to a proper description of the crime charged." Fadell, as a township assessor, was required to request funds to pay his legitimate employees. Requesting such funds was wrongful only if Fadell knew one or more of his employees were not working for the office. During the period in question, however, Fadell had many employees. Of these, several were alleged to be "ghost employees" in other counts of the indictment. Thus, the indictment's failure to name the "deputies and employees" involved left Fadell unable "to anticipate the proof which would be adduced against him," and unable to prepare his defense. Further, this indictment was insufficient to protect Fadell from double jeopardy, because it did not specify which of many appropriations made by Fadell gave rise to the Theft charge. The indictment for Theft by Deception was clearly insufficient, prejudicing Fadell's substantial rights. The trial court erroneously failed to dismiss the Theft by Deception charge against Fadell.

## IV.

Fadell next contends that his conviction for Theft was not supported by any evidence of criminal intent, and that the court erroneously failed to give an instruction on specific intent. We need not address these issues, however, since we have already determined that the Theft conviction must be reversed.

## V.

Next, Fadell argues that the court erroneously failed to dismiss Count I—Conspiracy with Gligor to Commit Perjury—because the same conduct had been the subject of a federal prosecution. Fadell relies on Ind.Code 35–41–4–5:

In a case in which the alleged conduct constitutes an offense within the concurrent jurisdiction of Indiana and another jurisdiction, a former prosecution in any other jurisdiction is a bar to a subsequent prosecution for the same conduct in Indiana, if the former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 [35–41–4–3] of this chapter.

Because Fadell was neither acquitted nor convicted in the federal prosecution, the question here is whether there was an "improper termination" of that prosecution.

 This question leads to Ind.Code 35–41–4–3:

(a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if:

....

(2) the former prosecution was terminated after the jury was impaneled and sworn or, in a trial by the court without a jury, after the first witness was sworn, unless (i) the defendant consented to the termination or waived, by motion to dismiss or otherwise, his right to object to the termination, (ii) it was physically impossible to proceed with the trial in conformity with law, (iii) there was a legal defect in the proceedings that would make any judgment entered upon a verdict reversible as a matter of law, (iv) prejudicial conduct, in or outside the courtroom, made it impossible to proceed with the trial without injustice to either the defendant or the state, (v) the jury was unable to agree on a verdict, or (vi) false statements of a juror on voir dire prevented a fair trial.

(b) If the prosecuting authority brought about any of the circumstances in subdivisions (a)(2)(i) through (a)(2)(vi) of this section, with intent to cause termination of the trial, another prosecution is barred.

In this case, the federal prosecution against Fadell resulted in a hung jury and a mistrial, after which the federal prosecutors failed to seek a retrial within the seventy-day limit. 18 U.S.C. § 3161(e). Fadell does not claim this mistrial was intentionally brought about by the federal prosecutors. Thus, the mistrial was not an "improper termination." Ind.Code 35–41–4–3(a)(2)(v). Fadell contends, however, that the federal prosecutor's failure to refile charges after the mistrial was an "improper termination" of the prosecution. We disagree. Such a "termination" could occur only "after the jury was impaneled and sworn . . . ." Ind. Code 35–41–4–3(a)(2). This means that a jury must be sitting at the time of the termination. In this case, the original jury had been dismissed after the mistrial, and no new jury had been sworn. Thus, the running of the statutory time for retrying Fadell did not terminate either the original jury trial or any new jury trial. Because the federal prosecution did not result in a judgment or an "improper termination," it was not a bar to a prosecution in Indiana for the same conduct. Ind.Code 35–41–4–5, *supra.* The court did not err in refusing to dismiss the Conspiracy charge on this basis.

## VI.

■ Fadell next contends that, because Theft by Deception is a lesser included offense of Ghost Employment in his case, the court erred in refusing to dismiss one of the charges before trial. This contention is without merit. Where a defendant is alleged to have committed acts that are a violation of more than one criminal statute, the State has the option of prosecuting him under any or all of the applicable statutes.

*Adams v. State,* (1974) 262 Ind. 220, 314 N.E.2d 53. It is true that a defendant may not be *convicted* and *sentenced* for both a greater offense and a lesser included offense. *Biggerstaff v. State,* (1982) Ind., 432 N.E.2d 34. Because we reverse Fadell's conviction for Theft by Deception, however, we need not decide whether that conviction, combined with the convictions for Ghost Employment, was improper under *Biggerstaff, supra.*

## VII.

■ Fadell next challenges his Conspiracy conviction, arguing (1) that the charge should have been dismissed because "a conspiracy to execute an unsworn statement entitled 'Affidavit' is no crime in Indiana" and (2) that there was insufficient evidence to sustain a conviction for Conspiracy. The first of these contentions, addressed to the adequacy of the indictment, is without merit. Fadell was not charged with "conspiracy to execute an unsworn statement." Rather, the indictment alleges Fadell conspired with Gligor for the purpose of having Gligor, "under oath or affirmation, . . . make a false affidavit . . . ." The court properly refused to dismiss the conspiracy charge.

In challenging the sufficiency of the evidence to support a conviction for Conspiracy, Fadell argues that, because all witnesses agreed that Gligor was not sworn before signing the affidavit, the jury could not have found a Conspiracy to Commit Perjury in an Affidavit.[2] We disagree. To prove the conspiracy charged, the State had to show that (1) Fadell united or combined with Gligor (2) for the purpose of committing the underlying felony—Perjury in a Voluntary Affidavit. Ind.Code 35–1–111–1 (1976) (amended and recodified at Ind.Code 35–41–5–2); *Walker v. State,* (1980) Ind. App., 414 N.E.2d 326. The State need not prove the underlying felony was accom-

---

**2.** Ind.Code 35–1–90–2 (1976), governing perjury in voluntary affidavits, provided as follows:
Whoever wilfully, corruptly and falsely, before any officer authorized to administer oaths, *under oath or affirmation,* voluntarily

makes any false certificate, affidavit or statement of any nature, for any purpose, shall be deemed guilty of perjury . . . .
(Emphasis added).

plished, but only that the conspirator's purpose was to commit it. *Walker supra,* at 329.

■ The record shows that Fadell prepared a document bearing the title "affidavit"—a title generally indicating a sworn statement. Black's Law Dictionary 54 (5th ed. 1979). This affidavit, drafted by Fadell, begins, "Comes now Dan Gligor and *being duly sworn upon this oath* deposes and says . . ." (emphasis added). The affidavit concludes with a line for a notary public's signature, stating, "subscribed and sworn to before me . . . ." The evidence further shows that Fadell had Gligor read this document, and that Gligor reluctantly agreed to sign it. From this evidence, the jury could have concluded beyond a reasonable doubt that Fadell's and Gligor's intended purpose at the time of their agreement was to have Gligor make a false affidavit under oath. Although Gligor's failure to take such an oath before signing the affidavit might indicate a contrary intent, we will not reweigh the evidence where, as here, there is substantial evidence to support the jury's verdict. *McManus v. State,* (1982) Ind., 433 N.E.2d 775.

### VIII.

Next, Fadell claims there was insufficient evidence to support his convictions for Ghost Employment as to two employees, Krevitz and Kusmierz. In reviewing for sufficiency of the evidence, this court will neither weigh the evidence nor evaluate the credibility of the witnesses. We will consider only the evidence most favorable to the State, together with all logical and reasonable inferences therefrom, and we will uphold the trial court's findings if there is substantial evidence on each element of the crime charged from which the trier of fact might reasonably infer guilt beyond a reasonable doubt. *McManus v. State, supra; Biggerstaff v. State,* (1982) Ind.App., 435 N.E.2d 621.

■ The crime of Ghost Employment was defined in Ind.Code 35–22–8–2(b) (1976):

It shall be unlawful for any appointing authority knowingly to assign duties not related to the operation of the public employer to an employee if the employee is compensated in whole or in part with moneys derived from any public funds whatsoever for the time spent in fulfilling those duties.

Fadell's conviction under this statute as to employee Kusmierz was supported by Kusmierz's unequivocal testimony that he did *no* assessor's work while he was on the assessor's payroll in 1973, during which time Fadell assigned him extensive duties managing Fadell's trucking companies. From this the jury was entitled to conclude that Fadell assigned Kusmierz private duties for which Kusmierz was compensated from public funds. Similarly, the conviction as to employee Krevitz was supported by his testimony that, for over a year, Fadell assigned him duties in the office of Fadell's private businesses, where he did virtually no assessing work. During this time, Krevitz was a full-time employee of the assessor's office. Krevitz also received $100 per week from Fadell's businesses. From this evidence, the jury was entitled to conclude that Fadell knowingly assigned Krevitz private duties for which he was compensated, in part, with public funds. Both of these convictions were supported by sufficient evidence.

### IX.

■ As a further basis for reversal of his Conspiracy conviction, Fadell contends the court erred in giving its instruction number 6 on the elements of conspiracy to commit perjury, and in refusing his tendered instruction on the same subject. Fadell argues the court's instruction misstated the law by failing to state that *both* conspirators must intend that the underlying felony be accomplished—a deficiency that Fadell's tendered instruction was designed to correct.[3] Generally, where the court's

---

**3.** Fadell also contends the court erred in allowing Gligor to answer a question relating to his

intent to take an oath. Fadell's brief, however, is devoid of authority or cogent argument on

own instructions correctly state the law and cover the tendered instruction's substance, there is no error in refusing to give a tendered instruction. *Dahlberg v. Ogle,* (1978) 268 Ind. 30, 373 N.E.2d 159. Here, any deficiency in the court's instruction number 6 was cured by instructions 7 and 8, indicating that conspiracy (under the old statute, Ind.Code 35–1–111–1 (1976)) requires both parties agree to the commission of a felony. Read together, the court's instructions correctly state the law and cover the tendered instruction's substance. The court did not err in giving these instructions instead of Fadell's.

## X.

Fadell next argues that the court erroneously refused to give his tendered instructions 7 and 9, to the effect that a township assessor has the authority within his discretion to give his employees any amount of time off, and to have these employees do unrelated work for him during such time off.[4] It is not error to reject a tendered instruction if (1) it incorrectly states the law, (2) it is not supported by the evidence, or (3) the substance of the rejected instruction is covered by the instructions which are given. *Dahlberg v. Ogle, supra.* Neither of these tendered instructions is supported by the evidence. Nothing in the record indicates that Fadell expressly gave any of the employees in issue time off from the assessor's office to allow them to work for his private businesses. Furthermore, these instructions misstate the law: Ind.Code 35–22–8–1 to –5 (1976), which Fadell violated, limits any discretion a public employer might have in giving time off. The court properly refused these instructions.

## XI.

Next Fadell challenges the court's refusal of his tendered instruction number 9, on witnesses' prejudice. The court's in-

struction 21 covered the substance of this tendered instruction. The court did not err. *Dahlberg, supra.*

## XII.

Further, Fadell claims that he was denied a fair trial by the systematic exclusion of women from the jury, and by the allegedly improper involvement of John Diamond, an enemy of Fadell's in the jury's selection. The right to an impartial jury precludes systematic and intentional exclusion of any particular class of persons, but it does not require that any particular class be represented. Jurors need not be mathematically proportioned to the character of the community. *Daniels v. State,* (1980) Ind., 408 N.E.2d 1244; *Tewell v. State,* (1976) 264 Ind. 88, 339 N.E.2d 792. The defendant bears the burden of showing that purposeful discrimination existed. *Tewell, supra.* Further, the defendant can shift the burden of *disproving* discrimination to the State by showing a significant unexplained disparity between the composition of the jury pool and that of the community. *Sanders v. State,* (1972) 259 Ind. 43, 53, 284 N.E.2d 751, 756. Here, the jury pool at voir dire was apparently composed of thirty-four men and twenty-four women. This hardly constitutes a "significant unexplained disparity" in the composition of the jury pool. Fadell has not shown any other convincing evidence of intentional, systematic exclusion of women from the jury. Furthermore, Fadell has failed to show how John Diamond, a Jury Commissioner who admittedly had animosity toward Fadell, improperly influenced the jury selection process or denied Fadell a fair trial. The record shows that Diamond was only minimally involved in the jury pool's selection. Fadell is not entitled to reversal on this basis.

## XIII.

Next, Fadell claims the court erroneously denied his motion for discharge un-

this point. Any error is accordingly waived. Ind.Rules of Procedure, A.R. 8.3(A)(7); *Alcoa v. Review Bd. of the Indiana Employment Security Div.,* (1981) Ind.App., 426 N.E.2d 54.

4. Fadell also challenges the court's instruction 11, defining Ghost Employment. Any error is waived, however, for failure to cite authority or make any cogent argument. A.R. 8.3(A)(7); *Alcoa supra.*

der Ind.Rules of Procedure, Criminal Rule 4(C). Fadell was indicted on February 24, 1978, and surrendered on February 27, 1978. Trial was originally set for December 4, 1978, but was re-set for February 26, 1979. On February 14, 1979, the State moved for a continuance, and the court, over Fadell's objection, moved the trial to April 2, 1979. Fadell subsequently moved for discharge under C.R. 4(C) on the grounds that this trial date was more than a year after his arrest. There was no error in this ruling. When delays are caused by the defendant's acts, the time limits of C.R. 4(C) are extended by the length of such delays. *Little v. State*, (1981) Ind., 415 N.E.2d 44, 45. Although Fadell's trial began 35 days after the one year limit had passed, the record shows that Fadell delayed the trial with a motion to dismiss, which was filed on April 18, 1978, and denied on June 20, 1978. This delay of more than 60 days is clearly chargeable to Fadell. *Anderson v. State*, (1982) Ind., 439 N.E.2d 558; *Little v. State*, *supra*. The court properly denied Fadell's motion for discharge.

### XIV.

■ Fadell argues next that the State knowingly used false evidence against him when it introduced documents entitled "Waiver of Immunity." These documents actually embodied several witnesses' agreements to testify in return for a grant of immunity from prosecution. The title "Waiver of Immunity" might, by some stretch of the imagination, have misled jurors. The contents of the documents, however, as well as the witnesses' testimony, made it clear that the witnesses had *received* immunity, not waived it, in return for their testimony. Fadell was not denied a fair trial by the introduction of these documents.

### XV.

■ Next, Fadell claims his conviction on two counts of Ghost Employment as to employee Kusmierz for different periods of time violated the double jeopardy clause of the constitution. The record shows Fadell put Kusmierz on the assessor's payroll in March, 1973, and then fired him in June, 1973. Fadell rehired Kusmierz in November, 1975, and had him on the assessor's payroll until September, 1976. It is true, as Fadell contends, that the double jeopardy clause bars multiple convictions for conduct constituting a single continuous offense. *Blockburger v. United States*, (1932) 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. The statute under which Fadell was convicted, however, does not proscribe a course of conduct, but the instantaneous act of assigning unrelated duties to a public employee. Further, Fadell's employment of Kusmierz in 1973, and again in 1975, can hardly be described as a single continuous act. The court did not err in entering judgment against Fadell on both of these counts of Ghost Employment.

### XVI.

■ Finally, Fadell claims the court erred in refusing to disqualify a deputy prosecutor who had previously represented two defense witnesses. Generally, "an attorney will not be permitted to assist in the prosecution of a criminal case if by reason of his professional relation with the accused, he has acquired a knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith." *Walker v. State*, (1980) Ind.App., 401 N.E.2d 795, 796. Fadell has not shown, however, that the deputy prosecutor had acquired any such knowledge of Fadell's case. Rather, Fadell seems to contend that he was prejudiced because his witnesses were "forced to testify against their own attorney's interest." Fadell's brief, however, is devoid of authority to support this novel argument. We are not convinced that the court was required to disqualify the deputy prosecutor on this basis.

The defendant's conviction for Theft by Deception is reversed and remanded with instructions to dismiss. In all other respects the trial court's judgment is affirmed.

CONOVER, J., concurs.

MILLER, J., concurs in result.