**Shawn L. BALD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 10S00–0101–CR–019.

Supreme Court of Indiana.

April 22, 2002.

---

Jeffrey D. Stonebraker, Clark County Public Defender, Jeffersonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury found Shawn L. Bald guilty of arson and three counts of felony murder. He appeals, arguing that (1) his convictions and sentences violate the Double Jeopardy Clause of the Indiana Constitution; (2) the prosecutor engaged in misconduct; (3) the trial court erred in admitting evidence of uncharged misconduct; and (4) insufficient evidence supported his convictions.

### Facts and Procedural History

On August 28, 1999, Bald and James Moore had a confrontation outside Moore's apartment complex. After the altercation, Moore's wife, Karen, heard Bald say, "[Y]ou do have to sleep sometime and you will burn." (R. at 845.) Another couple heard Bald make similar threats.

On September 11, 1999, fire swept through Moore's apartment complex. The fire killed Alan Rumple, Jennifer Steinberger, and the couple's infant child. Sharon Brewer injured herself while rescuing another child from the fire. Investigators determined the cause of the fire was arson, and the police arrested Bald.

The State charged Bald in thirteen counts, and the jury found him guilty on the three felony murder counts[1] and the four arson counts.[2] The court merged three arson findings into the felony murder convictions, leaving one arson count for the injury Brewer sustained.[3] It sentenced Bald to presumptive consecutive terms totaling one hundred ninety-five years.

### I. Double Jeopardy

Bald first argues that his convictions and sentences for three felony murders and one count of arson violate Article I, section 14 of the Indiana Constitution. *See Richardson v. State*, 717 N.E.2d 32 (Ind.1999).

In *Richardson*, we held that double jeopardy analysis requires two separate

inquiries: the "statutory elements test" and the "actual evidence test." 717 N.E.2d at 49. Bald concedes that he has no claim under the statutory elements test, but asserts that his convictions violate the actual evidence test.

We recently clarified the actual evidence test: "[U]nder the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is *not* violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, *but not all,* of the essential elements of a second offense." *Spivey v. State*, 761 N.E.2d 831, 833 (Ind.2002) (emphasis added).

██ Bald's argument fails under this analysis. The evidentiary facts used to establish felony murder established some, but not all, of the elements of the arson offense. To find Bald guilty of class A felony arson, the jury was required to find Brewer was injured as a result of arson. In finding Bald guilty of each felony murder, the jury was required to find evidence of a separate victim's death. Thus, each conviction required proof of at least one unique evidentiary fact. Accordingly, Bald's convictions do not violate the *Richardson/Spivey* actual evidence test.[4]

### II. Prosecutorial Misconduct Claim Not Preserved

██ Bald next contends that the prosecutor committed misconduct by mentioning

---

1. Ind.Code Ann. § 35–42–1–1(1) (West 1998).

2. *Id.* § 35–43–1–1(a)(1).

3. Count III charged the felony murder of Alan Rumple; Count VI charged the felony murder of Jennifer Steinberger; Count IX charged the felony murder of Henry Allen Rumple, Jr.; and Count XII charged class A felony arson resulting in the serious bodily injury to Sharon Brewer.

4. Bald also argues his conduct falls under a "hybrid" of the categories outlined in Justice Sullivan's concurrence in *Richardson*. (Appellant's Br. at 42–43.) *See* 717 N.E.2d at 55–57 (Sullivan, J., concurring). However, Bald's convictions arise from a situation "where separate victims are involved," which has been a scenario that does not constitute double jeopardy. *Id.* at 56 (Sullivan, J., concurring).

a witness's arrest during closing argument. Bald did not make contemporaneous objections to these statements. Therefore, he has not preserved this issue for appeal. *See Smith v. State*, 516 N.E.2d 1055 (Ind. 1987), *cert. denied*, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 347 (1988) (failure to make a prompt objection at trial results in waiver of the issue on appeal).

### III. Court Erred on Uncharged Misconduct

■ Bald also contends that the trial court erred in admitting evidence of a prior fight with an unidentified man. He argues that the evidence constituted uncharged misconduct prohibited by Indiana Evidence Rule 404(b).

The record reveals that on August 28, 1999, Bald fought with a man in an apartment complex near Colonial Park. At one point during the fight, Bald said, "[I]t's finished when I say it's done." (R. at 1715.) The man then pulled a gun on Bald, who fled, only to return later with his own gun. Bald left the scene again when he realized that his friend's daughter was in the apartment with the man. The court admitted this evidence over Bald's objection.

■ Indiana Evidence Rule 404(b) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." This rule serves to prohibit a jury from making the "forbidden inference" that because of a defendant's criminal propensity, he committed the charged act. *Monegan v. State*, 721 N.E.2d 243, 248 (Ind.1999).

Though the State argues that Bald's prior altercation was offered to prove motive, it is clear from the record that the evidence was intended to show Bald's propensity for following through with a threat. In arguing the motion at trial, the State said, "That's why we're here; that's why [Bald] says it's not over and that's why he says you gotta sleep sometime, you're going to burn and that's just in keeping of what he had said ... just a few hours prior to that [ ] other guy. It only ends when he says it ends...." (R. at 1695.) Further, the State said, "[The previous fight] goes directly to show why he, how he acts.... [T]his needs to go in front of the Jury and let them know this type of person and his motive for doing this...." (R. at 1703–04.)

The State used the fight to show Bald followed through with his threats—that it was his character. This is prohibited.

■ Though this character evidence should have been excluded, the error does not warrant reversal. "Trial court error is harmless if the probable impact of the error on the jury, in light of all of the evidence, is sufficiently minor such that it does not affect the substantial rights of the parties." *Hauk v. State*, 729 N.E.2d 994, 1002 (Ind.2000) (citations omitted). As we discuss below, even without the fight, the evidence was sufficiently strong that this error did not affect Bald's substantial rights.

### IV. The Evidence Was Sufficient

■ Lastly, Bald insists that the State failed to present sufficient evidence to support finding that he was the arsonist.

In reviewing the sufficiency of the evidence, we neither re-weigh the evidence nor judge the credibility of the witnesses. We look only to the probative evidence supporting the verdict and the reasonable inferences therefrom to determine whether a reasonable trier of

fact could conclude the defendant was guilty beyond a reasonable doubt. If there is substantial evidence of probative value to support the conviction it will not be set aside.

*Fields v. State,* 679 N.E.2d 898, 900 (Ind. 1997) (citations omitted).

The record supports Bald's convictions. It shows that on August 28, 1999, Bald fought with James Moore, then told Karen they had to sleep and would burn. A few days later, Bald told a friend about the fight and said "it wasn't over," and that "it wouldn't take nothing to throw a cocktail in the building or to burn the building down." (R. at 1147.)

In his brief to this Court, Bald "concede[s] the State proved the fire was intentionally set and not accidental." (Appellant's Br. at 44.) At least three witnesses saw Bald near the apartment building around the time it caught fire. (R. at 1661–65, 1149–51, 1178, 1183, 1888–91.) Bald also made incriminating comments to several people. Some of his statements, though not all, seemed to express satisfaction in the tragedy at the apartment building. (R. at 1151, 1183, 1664, 1890.)

For example, Bald showed up soon after the fire at the apartment of Jamie Brunner, an acquaintance who lived four or five blocks from Moore's complex. Bald told her about the blaze, saying "they was having a marshmallow roast." (R. at 1890–91.) When Brunner giggled at this, Bald said that it was not funny. He asked if he could stay at her place for a little while,

and she agreed. She described him at trial as saying "the white people were burning in the fire," and she guessed "they were the marshmallows." (*Id.*) She admitted that she told the police that Bald said, "I didn't mean for nobody to get hurt," but declared that Bald "didn't say that." [5] (R. at 1900, 1909.)

"Arson is almost always subject to proof solely by circumstantial evidence." *McGowan v. State,* 671 N.E.2d 1210, 1214 (Ind.Ct.App.1996) (citation omitted). Here, the circumstantial facts taken together were sufficient to support Bald's conviction as the arsonist. *See id.* (defendant's motive, presence at the scene, and conduct before and after the fire, combined with proof that the fire was intentional, sufficiently supported arson conviction).

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

**5.** Though Bald did not challenge the testimony, in the interest of clarity we note that its admission was consistent with two of our recent decisions.

A party may not place a witness on the stand for the sole purpose of presenting otherwise inadmissible evidence cloaked as impeachment. *Griffin v. State,* 754 N.E.2d 899, 904 (Ind.2001) (citation omitted). Here, however, Brunner provided other relevant testimony

regarding events surrounding the fire. *See Appleton v. State,* 740 N.E.2d 122, 125 (Ind. 2001) (reasonable for State to call witness who observed an attack for reasons other than impeachment). Moreover, unlike the witness in *Griffin* who was impeached by the testimony of another witness, Brunner herself admitted making the prior statement. *See Griffin,* 754 N.E.2d at 903–04.