Garland WHALEY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0502–CR–99.

Court of Appeals of Indiana.

Feb. 7, 2006.

Transfer Denied April 6, 2006.

Hilary Bowe Ricks, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

SHARPNACK, Judge.

Garland Whaley appeals his convictions and sentences for dealing in cocaine as a class A felony,[1] resisting law enforcement as a class C felony,[2] two counts of resisting law enforcement as class D felonies,[3] and his status as an habitual substance offender[4] and an habitual offender.[5] Whaley raises five issues, which we revise and restate as:

I.  Whether the evidence is sufficient to sustain his convictions for dealing in cocaine, resisting law enforcement as a class C felony, and two counts of resisting law enforcement as class D felonies, and his status as an habitual substance offender;

II. Whether the trial court erred by sentencing Whaley as an habitual

---

1.  Ind.Code § 35–48–4–1 (2004).

2.  Ind.Code § 35–44–3–3 (2004).

3.  *Id.*

4.  Ind.Code § 35–50–2–10 (2004) (subsequently amended by Pub.L. No. 71–2005, § 12

(emerg. eff. Apr. 25, 2005), and Pub.L. No. 213–2005, § 5 (emerg. eff. May 11, 2005)).

5.  Ind.Code § 35–50–2–8 (2004) (subsequently amended by Pub.L. No. 71–2005, § 11 (emerg. eff. Apr. 25, 2005)).

offender and habitual substance offender without having first found that Whaley was an habitual offender and habitual substance offender;

III. Whether the trial court abused its discretion by ordering a sentence enhanced by Whaley's status as an habitual offender to be served consecutive to a sentence enhanced by Whaley's status as an habitual substance offender;

IV. Whether Whaley was subject to multiple punishments for the same offense in violation of the prohibition against double jeopardy as a result of his two convictions for resisting law enforcement as class D felonies; and

V. Whether Whaley's sentences violate *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.*

We affirm in part, reverse in part, and remand.

The relevant facts follow. Ronnie Dunham was a cooperating individual for the Marion County Sheriff's Department Covert Operations Narcotics section. On March 1, 2003, Dunham met with Detective Michael O'Day and Deputy Luke Schmitt. Dunham called Whaley and arranged to meet at a Village Pantry to purchase one-quarter ounce of crack cocaine for $300.00. Deputy Schmitt then searched Dunham and drove him to the Village Pantry. Upon arriving at the Village Pantry, Dunham talked to Whaley, and Whaley changed the location of the transaction to a McDonald's restaurant. Deputy Schmitt and Dunham drove to the McDonald's restaurant and waited for Whaley to arrive. When Whaley arrived, Deputy Schmitt gave $300.00 in photocopied buy money to Dunham, and Dunham exited Deputy Schmitt's vehicle and got into the backseat of Whaley's vehicle. Whaley gave Dunham a plastic baggie containing crack cocaine, and Dunham gave the $300.00 to Whaley. Dunham then returned to Deputy Schmitt's vehicle and showed Deputy Schmitt the baggie. Deputy Schmitt then gave the "takedown signal." Transcript at 137.

Sergeant Garth Schwomeyer pulled into the McDonald's parking lot, activated his emergency lights, and stopped his car near Whaley's vehicle. He exited his vehicle and pointed his weapon at Whaley's windshield. Whaley drove his car toward Sergeant Schwomeyer but swerved and struck a car driven by Detective Bryan Durham. As a result, Detective Durham's hand, wrist, arm, shoulder, back, and neck were injured.

Whaley sped toward the parking lot exit and was pursued by Sergeant Schwomeyer. Deputy Larry Craciunoiu and Deputy Matthew Morgan entered the parking lot with their emergency lights activated, and Whaley drove around them and into a ditch. Whaley then exited his vehicle and fled on foot. Deputy Craciunoiu and Deputy Morgan chased Whaley and caught him when he fell down. Whaley put his arms underneath his body to prevent the deputies from handcuffing him. The deputies had to hit Whaley's forearms in order to bring his arms behind his back. As a result, Deputy Craciunoiu injured his right hand, and Deputy Morgan injured his wrist and right hand. The $300.00 in buy money was recovered from Whaley, and testing revealed that the baggie contained 5.0760 grams of cocaine.

The State charged Whaley with: (1) Count I, dealing in cocaine as a class A felony; (2) Count II, possession of cocaine as a class D felony; (3) Count III, resisting law enforcement as a class D felony, for fleeing from Deputy Morgan; (4) Count IV, criminal recklessness as a class

A misdemeanor, by operating his vehicle at and toward Detective Durham; (5) Count V, resisting law enforcement as a class A misdemeanor, for forcibly resisting Deputy Morgan; (6) Count VI, resisting law enforcement as a class C felony, for fleeing from Deputy Morgan and Deputy Craciunoiu and injuring Detective Durham; (7) Count VII, resisting law enforcement as a class D felony, for forcibly resisting Deputy Morgan and injuring Deputy Morgan; and (8) Count VIII, resisting law enforcement as a class D felony, for forcibly resisting Deputy Craciunoiu and injuring Deputy Craciunoiu. The State also alleged that Whaley was an habitual substance offender due to prior convictions for conspiracy to commit possession of cocaine and possession of marijuana and an habitual offender due to prior convictions for attempted auto theft and resisting law enforcement as a class D felony.

After a bench trial, the trial court found Whaley guilty of: (1) Count I, dealing in cocaine as a class A felony; (2) Count II, possession of cocaine as a class D felony, which the trial court merged with Count I; (3) Count III, resisting law enforcement as a class D felony, which the trial court merged with Count VI; (4) Count IV, criminal recklessness as a class A misdemeanor; (5) Count V, resisting law enforcement as a class A misdemeanor, which the trial court merged with Count VI; (6) Count VI, resisting law enforcement as a class C felony; (7) Count VII, resisting law enforcement as a class D felony; and (8) Count VIII, resisting law enforcement as a class D felony. In the habitual phase, the State presented evidence regarding Whaley's prior convictions, and Whaley stipulated as to his prior convictions. The trial court then took the habitual offender and habitual substance offender allegations under advisement.

At sentencing, the trial court found one mitigator, the fact that Whaley made attempts to improve his life while incarcerated. The trial court also found two aggravators, Whaley's criminal history and Whaley's probation revocations, and that the aggravators outweighed the mitigators. The trial court also noted the fact that "a period of incarceration may be necessary because that's the only time that the defendant does things to improve himself." Transcript at 414. The trial court sentenced Whaley to: (1) forty years for Count I, dealing in cocaine as a class A felony, with eight years added for Whaley's status as an habitual substance offender; (2) 365 days for Count IV, criminal recklessness as a class A misdemeanor,[6] to be consecutive to the sentence in Count I but concurrent to the sentence in Count VI; (3) six years for Count VI, resisting law enforcement as a class C felony, with nine years added for Whaley's status as an habitual offender, to be served concurrent to the sentence for Count IV but consecutive to the sentence for Count I; (4) two years for Count VII, resisting law enforcement as a class D felony, to be served concurrent to the sentence for Count VIII but consecutive to the sentences in Count I, Count IV, and Count VI; (5) two years for Count VIII, resisting law enforcement as a class D felony, to be served concurrent to the sentence for Count VIII but consecutive to the sentences in Count I, Count IV, and Count VI. Thus, Whaley received an aggregate sentence of sixty-five years in the Indiana Department of Correction.

**I.**

The first issue is whether the evidence is sufficient to sustain Whaley's convictions for dealing in cocaine, resisting law en-

---

6. Whaley does not appeal this conviction.

forcement as a class C felony, two counts of resisting law enforcement as class D felonies, and his status as an habitual substance offender. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

## A. *Dealing in Cocaine.*

■ The offense of dealing in cocaine as a class A felony is governed by Ind.Code § 35–48–4–1, which provides that "[a] person who ... knowingly or intentionally ... delivers ... cocaine ... commits dealing in cocaine ... a Class B felony, except as provided in subsection (b)." I.C. § 35–48–4–1(a). The offense is a class A felony if "the amount of the drug involved weighs three (3) grams or more." I.C. § 35–48–4–1(b). Whaley argues that the evidence is insufficient to show that he delivered more than three grams of cocaine. Specifically, Whaley argues that Dunham may have added cocaine to the package given to him by Whaley.

■ This argument is similar to a challenge to the chain of custody. "Merely raising the possibility of tampering with the evidence is an insufficient method of challenging the chain of custody." *Johnson v. State,* 594 N.E.2d 817, 818 (Ind.Ct. App.1992). "When dealing with fungible evidence such as cocaine, the State must give reasonable assurance the property passed through the hands of the parties in an undisturbed condition." *Id.* "[T]he State need not establish a 'perfect' chain of custody, and any gaps impact solely on the

weight, not the admissibility, of the evidence." *Id.*

First, Whaley contends that the deputies failed to adequately search Dunham prior to the controlled buy.

A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

*Methene v. State,* 720 N.E.2d 384, 389–390 (Ind.Ct.App.1999) (quoting *Flaherty v. State,* 443 N.E.2d 340, 341 (Ind.Ct.App. 1982)). The record indicates that this is the procedure followed by the officers here. Deputy Schmitt searched Dunham, including his pockets, shoes, and waistband, after Dunham arranged the drug deal with Whaley. Deputy Schmitt testified that he is familiar with the areas that cocaine users keep their cocaine. Although Deputy Schmitt did not search Dunham's mouth or perform a body cavity search, Dunham was within Deputy Schmitt's sight from the time Deputy Schmitt searched him to the time he got into the vehicle with Whaley.

Whaley also points out that the cocaine had been lost between the testing and the time of the trial and that the chemist testified the package contained both crack cocaine and powder cocaine. The record indicates that Glen Maxwell of the Marion County Forensic Services Agency analyzed the contents of the package given to Dunham by Whaley. Glen Maxwell deter-

mined that the package contained 5.0760 grams of cocaine base, i.e., crack cocaine. Maxwell also testified that "[t]here was a slight indication that there might have been just a little bit of cocaine possibly with hydrochloride." Transcript at 273–274. Maxwell testified that cocaine hydrochloride is powder cocaine.

Despite the "slight indication" of powder cocaine in the sample, the State gave reasonable assurances that the cocaine passed through the parties' hands in an undisturbed condition. The deputy searched Dunham, and Dunham was in the deputy's sight until he entered Whaley's vehicle. When Dunham returned to the deputy, Dunham showed the deputy the baggie. Whaley simply requests that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. There is evidence in the record to support the assertion that Whaley sold Dunham over three grams of cocaine. Thus, we conclude that the State presented evidence of probative value from which the trial court could have found Whaley guilty beyond a reasonable doubt of dealing in cocaine as a class A felony. *See, e.g., Johnson,* 594 N.E.2d at 818 (holding that the evidence was sufficient to sustain the defendant's conviction for possession of cocaine despite the defendant's claim of tampering).

## B. *Resisting Law Enforcement as a Class C Felony.*

■ The offense of resisting law enforcement as a class C felony is governed by Ind.Code § 35–44–3–3, which provides that "[a] person who knowingly or intentionally ... flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop" and "operates a vehicle in a manner that causes serious bodily injury to another person" commits resisting law enforcement as a class C felony. The charging information provided:

> [Whaley], on or about March 1, 2003, did knowingly flee from Deputy Matthew Morgan and Deputy Larry Craciupiu [sic], law enforcement officers empowered by the Marion County Sheriff's Department, Deputies Morgan and Craciupiu [sic] had identified themselves by visible or audible means and ordered [Whaley] to stop, and while committing said offense [Whaley] did operate a vehicle, that is: a 1996 Chevrolet Lumina automobile in a manner that caused serious bodily injury to Detective Brian [sic] Durham, said injury being extreme pain to his left shoulder, arm and hand[.]

Appellant's Appendix at 32.

Whaley argues that the State did not present evidence that he was fleeing from Deputy Morgan or Deputy Craciunoiu when Detective Durham was injured. Rather, according to Whaley, the evidence demonstrated that he was fleeing from Sergeant Schwomeyer when Detective Durham was injured.[7] Our review of the evidence reveals that Whaley is correct.

After the controlled buy, Sergeant Schwomeyer pulled into the McDonald's parking lot, activated his emergency lights, and stopped his car near Whaley's vehicle. He exited his vehicle and pointed his weapon at Whaley's windshield. Whaley drove his car toward Sergeant Schwomeyer but swerved and struck a car driven by Detective Durham. Whaley then sped toward the parking lot exit and was pursued by Sergeant Schwomeyer. Deputy Craciunoiu and Deputy Morgan entered the parking lot, and Whaley drove around them and into a ditch. According to Deputy Morgan and Deputy Craciunoiu's testimony, when they arrived at the scene, they

7. Whaley also made this argument during his closing arguments.

saw Whaley's vehicle coming toward them, and Whaley swerved into a ditch. Thus, according to the testimony, Detective Durham was injured before Deputy Morgan or Deputy Craciunoiu arrived at the scene. The State should have charged Whaley with fleeing Sergeant Schwomeyer and causing serious bodily injury to Detective Durham. Whaley argues that this variance between the charging information and the evidence presented at trial is fatal to the conviction.

■■■ An information must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Ind.Code § 35–34–1–2(d), and "must be sufficiently specific to apprise the defendant of the crime for which he is charged and to enable him to prepare a defense." *Bonner v. State*, 789 N.E.2d 491, 493 (Ind.Ct.App.2003) (quoting *Jones v. State*, 467 N.E.2d 1236, 1241 (Ind.Ct. App.1984)).

> The test to determine whether a variance between the proof at trial and a charging information or indictment is fatal is as follows:
>
> (1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;
>
> (2) will the defendant be protected in the future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

*Mitchem v. State*, 685 N.E.2d 671, 677 (Ind.1997) (quoting *Harrison v. State*, 507 N.E.2d 565, 566 (Ind.1987)). "A criminal defendant has the right to be advised of the nature and cause of the accusation against him. There must be consistency between the allegations charged and the proof adduced ...." *Simmons v. State*, 585 N.E.2d 1341, 1344 (Ind.Ct.App.1992).

"While the names of third persons only collaterally or incidentally related to the offense charged may be omitted from an information or indictment, the names of those whose identities are essential to a proper description of the offense charged must be alleged if known." *Bonner*, 789 N.E.2d at 493 (citing *Fadell v. State*, 450 N.E.2d 109, 115 (Ind.Ct.App.1983)).

In support of his argument, Whaley relies in part upon *Bonner*, 789 N.E.2d at 493–494. There, Officer Hutson attempted to pull a truck over, but the truck sped off. *Id.* at 492. Sergeant Lapp joined the chase, the truck stopped, and the defendant ran away from the truck. *Id.* Officer Gerardot joined the search for the defendant and found him hiding. *Id.* Officer Gerardot ordered the defendant to get on the ground, and the defendant complied. *Id.* The State then charged the defendant with resisting law enforcement as a class D felony for fleeing from Officer Hutson and Sergeant Lapp and resisting law enforcement as a class A misdemeanor for fleeing from Officer Gerardot. *Id.* A jury found him guilty of resisting law enforcement as a class A misdemeanor. *Id.*

On appeal, the defendant argued that he did not resist Officer Gerardot. *Id.* at 493. The State conceded that there was no evidence that the defendant resisted Officer Gerardot but argued that the defendant "was subject to conviction for Class A misdemeanor Resisting under the information for his flight from Officer Hutson and Sergeant Lapp." *Id.* We held:

> [T]he names of the particular officers from whom Bonner fled were essential to the proper description of the State's two separate resisting charges, and the State had to specifically identify the officer or officers whose arrest efforts Bonner allegedly resisted in each information. Given the number of officers involved in the police chase and the

number of ways Bonner was alleged to have fled from the different officers, the separate Resisting charges would not have provided Bonner with sufficient information to anticipate the proof that would be adduced against him with regard to each charge if the officers pertinent to each separate offense had not been particularly identified. *See Fadell,* 450 N.E.2d at 116 (in prosecution of township assessor for Theft by Deception, information that failed to identify the particular deputies and employees involved in the offense was insufficient to enable the defendant to anticipate the proof that would be adduced against him).

*Id.* Thus, we held that the defendant's conviction for resisting law enforcement as a class A misdemeanor was unsupported by sufficient evidence and must be reversed. *Id.* at 494.

■ Similarly, here, the State charged Whaley with injuring Detective Durham while fleeing Deputy Morgan and Deputy Craciunoiu, but the evidence presented at trial revealed that Whaley was fleeing Sergeant Schwomeyer when he injured Detective Durham. The State had to specifically identify the officer or officers that Whaley resisted. As in *Bonner,*

given the number of officers involved in arresting Whaley and the number of ways Whaley was alleged to have fled, the correct names of the officers involved were essential to a proper description of the offense charged. We conclude that the evidence is insufficient to sustain Whaley's conviction for resisting law enforcement as a class C felony.[8] *See, e.g., id.*

C. *Resisting Law Enforcement as a Class D Felony.*

■ The offense of resisting law enforcement as a class D felony is governed by Ind.Code § 35–44–3–3, which provides that "[a] person who knowingly or intentionally ... forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer" and, while committing the offense, "inflicts bodily injury on another person" commits resisting law enforcement as a class D felony. Whaley argues that he did not inflict bodily injury on Deputy Morgan or Deputy Craciunoiu; rather, he contends that Deputy Morgan and Deputy Craciunoiu inflicted injury upon themselves by hitting Whaley's arms. Whaley asks that these convictions be reduced to class A misdemeanors.

---

8. The trial court attached the habitual offender enhancement to the sentence for this offense. On remand, the trial court can reattach habitual offender enhancement to one of the other felony convictions. *See, e.g., Greer v. State,* 680 N.E.2d 526, 527–528 (Ind.1997) (holding that the trial court could reattach the habitual offender enhancement to the defendant's robbery conviction on remand after the defendant's attempted murder conviction, to which habitual offender enhancement had originally attached, was reversed on appeal).

Additionally, Whaley argues that Count III, resisting law enforcement as a class D felony for fleeing from Deputy Morgan, which the trial court merged into the conviction for resisting law enforcement as a class C felony, must also be vacated. The State alleged in

Count III that Whaley knowingly fled from Deputy Morgan after Deputy Morgan identified himself by visible or audible means and ordered Whaley to stop, and while committing the offense Whaley was operating a vehicle. The evidence presented at trial demonstrated that Deputy Matthew Morgan entered the parking lot with his emergency lights activated, and Whaley drove around him and into a ditch. Whaley then exited his vehicle and fled on foot. This evidence is sufficient to sustain a conviction for Count III. The parties make no argument regarding whether Count III should merge with Count VII, resisting law enforcement as a class D felony for forcibly resisting and injuring Deputy Morgan, and we express no opinion on this issue.

■ Whaley compares the "inflicts bodily injury" phrase with other statutes that use the phrase "results in bodily injury." Whaley argues that the "inflicts bodily injury" implies a "more direct causation." Appellant's Brief at 18. When interpreting a statute, we independently review the statute's meaning and apply it to the facts of the case under review. *State v. Evans,* 810 N.E.2d 335, 337 (Ind. 2004) (citing *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002)), *reh'g denied.* "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *Id.* If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id.* We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.* "To be sure, penal statutes must be strictly construed against the State, but a statute should not be overly narrowed so as to exclude cases fairly covered by it and should be interpreted so as to give efficient operation to the expressed intent of the legislature." *Baird v. State,* 604 N.E.2d 1170, 1190 (Ind.1992), *cert. denied,* 510 U.S. 893, 114 S.Ct. 255, 126 L.Ed.2d 208 (1993).

■ The statute does not define the term "inflicts." When the legislature has not defined a word, we give the word its common and ordinary meaning. *Ind. Office of Environmental Adjudication v. Kunz,* 714 N.E.2d 1190, 1193 (Ind.Ct.App. 1999). In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries. *Id.* "[I]nflict" is generally defined as "**a**: to give by or as if by striking <*inflict* pain> **b**: to cause (something unpleasant) to be endured." MERRIAM-WEBSTER ONLINE DICTIONARY,

available at www.m-w.com/dictionary (last visited Dec. 19, 2005). Accordingly, a person resists law enforcement as a class D felony if he "knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer" and, while committing the offense, causes someone to experience bodily injury. Deputy Morgan and Deputy Craciunoiu's injuries were directly related to and caused by Whaley's resisting arrest. We conclude that such actions were included within the definition of inflict, and we reject Whaley's overly narrow interpretation of the statute. Consequently, the evidence is sufficient to sustain Whaley's convictions for two counts of resisting law enforcement as class D felonies. *See, e.g., Rupert v. State,* 717 N.E.2d 1209, 1210 (Ind.Ct.App.1999) (rejecting the defendant's overly narrow interpretation of the term sex organ).

### D. *Habitual Substance Offender.*

■ An habitual substance offender finding is governed by Ind.Code § 35–50–2–10 (2004), which provides:

(a) As used in this section:

(1) "Drug" means a drug or a controlled substance (as defined in IC 35–48–1).

(2) "Substance offense" means a Class A misdemeanor or a felony in which the possession, use, abuse, delivery, transportation, or manufacture of alcohol or drugs is a material element of the crime. The term includes an offense under IC 9–30–5 and an offense under IC 9–11–2 (before its repeal July 1, 1991).

(b) The state may seek to have a person sentenced as a habitual substance offender for any substance offense

by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated substance offense convictions.

(c) After a person has been convicted and sentenced for a substance offense committed after sentencing for a prior unrelated substance offense conviction, the person has accumulated two (2) prior unrelated substance offense convictions. However, a conviction does not count for purposes of this subsection if:

(1) it has been set aside; or

(2) it is a conviction for which the person has been pardoned.

\* \* \* \* \*

(e) A person is a habitual substance offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated substance offense convictions.

Here, the State alleged that Whaley's two prior unrelated substance offense convictions were a 1996 conviction for conspiracy to commit possession of cocaine as a class C felony and a 1996 conviction for possession of marijuana as a class A misdemeanor. Whaley argues that his conviction for conspiracy to commit possession of cocaine was not a qualifying substance offense because the "possession, use, abuse, delivery, transportation, or manufacture" of cocaine was not a material element of the conspiracy conviction.

A person commits conspiracy to commit possession of cocaine as a class C felony when, with intent to commit possession of cocaine,[9] he agrees with another person to commit the felony and an overt act in furtherance of the agreement is performed. Ind.Code § 35–41–5–2; *Vance v. State*, 640 N.E.2d 51, 57 (Ind.1994) (holding that "the State must establish that the defendant had the intent to commit a crime, agreed with another person to commit that crime, and that some overt act was performed in furtherance of that agreement" to prove conspiracy). The State argues that possession of cocaine was a material element of Whaley's conspiracy conviction because the "crux of a conspiracy to possess cocaine" is the "intent to possess the cocaine." Appellee's Brief at 16. However, we rejected a similar argument in *Murray v. State*, 798 N.E.2d 895, 902–903 (Ind.Ct.App.2003). There, the State argued that the defendant's conviction for possession of precursors with intent to manufacture was a substance offense because "the intent to manufacture a drug is a material element." *Murray*, 798 N.E.2d at 902. We noted

9. The offense of possession of cocaine is governed by Ind.Code § 35–48–4–6, which, at the time of Whaley's offense, provided:

(a) A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses cocaine (pure or adulterated), a narcotic drug (pure or adulterated) classified in schedule I or II, or methamphetamine (pure or adulterated) commits possession of cocaine, a narcotic drug, or methamphetamine, a Class D felony, except as provided in subsection (b).

(b) The offense is:
(1) a Class C felony if the amount of the drug involved (pure or adulterated) weighs three (3) grams or more . . . .

Whaley committed the offense on October 21, 1994. (State's Exhibit 13) The statute was subsequently amended by Pub.L. No. 296–1995, § 7 (eff. July 1, 1995); Pub.L. No. 65–1996, § 15 (eff. July 1, 1996); Pub.L. No. 188–1999, § 7 (eff. July 1, 1999); and Pub.L. No. 17–2001, § 24 (eff. July 1, 2001).

that "[t]he State, however, emphasizes the wrong part of the statute defining the crime. Indeed, it is the intent to manufacture, not the manufacture itself, which makes the possession of two or more precursors a crime." *Id.* at 902–903. Thus, we concluded that manufacture of drugs was not a material element of the crime of possession of precursors with intent to manufacture and that possession of precursors with intent to manufacture was not a substance offense in the context of the habitual substance offender statute. *Id.* at 903.

Here, the record does not indicate the nature of the overt act alleged in connection with Whaley's conspiracy conviction. In order to qualify as a substance offense, the State was required to show that a material element of Whaley's prior conviction was the "possession, use, abuse, delivery, transportation, or manufacture of alcohol or drugs." However, from the record available to us, we cannot say that the possession, use, abuse, delivery, transportation, or manufacture of cocaine was a material element of Whaley's conspiracy conviction. The intent to possess the cocaine does not make the conspiracy conviction a substance offense. We conclude that Whaley's conviction for conspiracy to commit possession of cocaine is not a substance offense, and the evidence is insufficient to sustain Whaley's status as an habitual substance offender. *See, e.g., id.* Thus, we direct the trial court to vacate the habitual substance offender enhancement that was attached to Count I, dealing in cocaine as a class A felony.

## II.

The next issue is whether the trial court erred by sentencing Whaley as an habitual offender and habitual substance offender without having first found that Whaley was an habitual offender and ha-

bitual substance offender. At the end of the habitual phase of the trial, the trial court took the matter under advisement. At the sentencing hearing, the trial court heard argument about the habituals and then asked for argument on general sentencing issues. After hearing argument, the trial court then proceeded to sentence Whaley, including enhancements for his status as an habitual substance offender and habitual offender. Whaley argues that the trial court enhanced his sentence based upon his status as an habitual substance offender and habitual offender without specifically finding that he was either an habitual substance offender or an habitual offender. Whaley asks that we vacate both of the enhancements. However, as we are vacating the habitual substance offender enhancement, we need not address Whaley's argument as it related to that enhancement.

The State argues that the trial court's failure to formally enter verdicts or judgment does not require us to vacate the enhancements. The State relies upon *Schalkle v. State*, 272 Ind. 134, 140, 396 N.E.2d 384, 389 (1979), in which the Indiana Supreme Court held that "the law is well settled in Indiana that the terms 'judgment' and 'sentence' are synonymous within the context of criminal law." Further, in *Martinez v. State*, 549 N.E.2d 1026, 1030 (Ind.1990), the defendant argued "the non-entry of judgment by the trial court upon the jury's verdict of guilty left his case in a status of no final disposition; thus, the court had no authority to sentence him." The Indiana Supreme Court held "that failure to enter judgment prior to sentencing does not constitute error provided the defendant is otherwise properly sentenced." *Martinez*, 549 N.E.2d at 1030. Likewise, here, the trial court's failure to enter judgment as to Whaley's status as an habitual offender does not constitute error. However, given

that we are remanding for resentencing on other issues, we direct the trial court to correct this deficiency on remand.

### III.

The next issue is whether the trial court abused its discretion by ordering the sentence enhanced by Whaley's status as an habitual offender to be served consecutive to the sentence enhanced by Whaley's status as an habitual substance offender. Whaley argues that the trial court abused its discretion when it ordered the sentence for dealing in cocaine, which was enhanced by his status as an habitual substance offender, to be served consecutive to his sentence for his sentence for resisting law enforcement as a class C felony, which was enhanced by his status as an habitual offender. Although we need not address this issue because we are reversing Whaley's habitual substance offender enhancement, we note the State concedes that current authority suggests that a defendant with sentences enhanced due to an habitual offender finding and an habitual substance offender finding may not be ordered to serve the sentences consecutively. *See, e.g., Starks v. State,* 523 N.E.2d 735 (Ind.1988) (holding that the relevant "statutes are silent on the question of whether courts have the authority to require habitual offender sentences to run consecutively, when engaged in the process of meting out several sentences. In the absence of express statutory authorization for such a tacking of habitual offender sentences, there is none."); *McCotry v. State,* 722 N.E.2d 1265, 1268 (Ind.Ct.App.2000) (holding that the trial court abused its discretion by ordering a sentence enhanced by his status as an habitual offender to be consecutive to a sentence enhanced by his status as an habitual substance offender), *trans. denied.*

### IV.

The next issue is whether Whaley was subject to multiple punishments for the same offense in violation of the prohibition against double jeopardy as a result of his two convictions for resisting law enforcement as class D felonies. Whaley's argument concerns his conviction for resisting law enforcement as a class D felony for forcibly resisting Deputy Morgan and inflicting bodily injury on Deputy Morgan and his conviction for resisting law enforcement as a class D felony for forcibly resisting and inflicting bodily injury on Deputy Craciunoiu. The evidence presented at trial revealed that Deputy Craciunoiu and Deputy Morgan chased Whaley and caught him when he fell down. Whaley put his arms underneath his body to prevent the deputies from handcuffing him. The deputies had to hit Whaley's forearms in order to bring his arms behind his back. As a result, Deputy Craciunoiu injured his right hand, and Deputy Morgan injured his wrist and right hand.

Whaley argues that "a defendant may not be convicted in more than one (1) count for the same act of resisting, even if more than one (1) officer is involved." Appellant's Brief at 25. In *Touchstone v. State,* 618 N.E.2d 48, 49 (Ind.Ct.App.1993), the defendant was convicted of three counts of resisting law enforcement for forcibly resisting three officers who were trying to arrest him. Based upon *Armstead v. State,* 549 N.E.2d 400 (Ind.Ct.App. 1990), we concluded that "resisting law enforcement is not an offense against the person, but against lawful authority. Thus, in a single incident only one offense is committed regardless of the number of officers involved." *Touchstone,* 618 N.E.2d at 49. Consequently, we vacated two of the resisting law enforcement convictions. *Id.*

The State argues that Whaley's convictions do not violate double jeopardy because "although they share the same facts, they involved two separate victims." Appellee's Brief at 18. The Indiana Supreme Court has repeatedly held that where convictions arise from a situation where separate victims are involved, no double jeopardy violation exists. For example, in *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind.2002), the Indiana Supreme Court upheld the defendant's convictions for three murders and arson. The court held:

> The evidentiary facts used to establish felony murder established some, but not all, of the elements of the arson offense. To find Bald guilty of class A felony arson, the jury was required to find Brewer was injured as a result of arson. In finding Bald guilty of each felony murder, the jury was required to find evidence of a separate victim's death. Thus, each conviction required proof of at least one unique evidentiary fact. Accordingly, Bald's convictions do not violate the *Richardson/ Spivey* actual evidence test.

*Bald,* 766 N.E.2d at 1172. *See also Burnett v. State,* 736 N.E.2d 259, 263 n. 3 (Ind.2000) (holding that multiple confinement convictions do not violate double jeopardy where there are multiple victims), *overruled on other grounds by Ludy v. State,* 784 N.E.2d 459 (Ind.2003); *Richardson v. State,* 717 N.E.2d 32, 56 (Ind. 1999) (Sullivan, J. concurring) ("[W]here separate victims are involved or the behavior or harm that is the basis of the enhancement is distinct and separate, no relief will be provided.").

Here, Whaley's resisting law enforcement convictions are more than simply offenses against lawful authority. Although both of the resisting law enforcement as class D felonies involved a single incident of resisting, two people were injured as a result of Whaley's resisting. Each conviction required proof of at least one unique evidentiary fact, i.e., injuries to Deputy Morgan or injuries to Deputy Craciunoiu. Because each conviction involved separate victims, we conclude that Whaley's two convictions for resisting law enforcement as class D felonies do not violate double jeopardy. *See, e.g., Bald,* 766 N.E.2d at 1172.

## V.

■ The last issue is whether Whaley's sentences violate *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* On June 24, 2004, the United States Supreme Court decided *Blakely,* which held that facts supporting an enhanced sentence must be admitted by the defendant or found by a jury. *Blakely,* 542 U.S. at 303–304, 124 S.Ct. at 2537; *Cotto v. State,* 829 N.E.2d 520, 527 n. 2 (Ind.2005). In *Smylie v. State,* the Indiana Supreme Court held that *Blakely* was applicable to Indiana's sentencing scheme and required that "the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." *Smylie v. State,* 823 N.E.2d 679, 686 (Ind.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005). The Indiana Supreme Court recently noted that "*Blakely* and the later case *United States v. Booker* [, 543 U.S. 220, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005),] indicate that there are at least four ways that meet the procedural requirements of the Sixth Amendment in which such facts can be found and used by a court in enhancing a sentence." *Mask v. State,* 829 N.E.2d 932, 936 (Ind.2005).

> [A]n aggravating circumstance is proper for *Blakely* purposes when it is: 1) a fact of prior conviction; 2) found by a jury beyond a reasonable doubt; 3) admitted to by a defendant; or 4) stipu-

lated to by the defendant, or found by a judge after the defendant consents to judicial fact-finding, during the course of a guilty plea in which the defendant has waived his *Apprendi* rights.

*Id.* at 936–937 (citing *Trusley v. State,* 829 N.E.2d 923, 925 (Ind.2005)).

The trial court stated the following at the sentencing hearing:

> The Court finds mitigating circumstances that while incarcerated this time [Whaley] has made some substantial efforts to improve his life. By all the certificates that he has tendered to the Court. The passing of his GED finally. Participation in programs offered at CCA both in dealing with the . . . fatherhood stuff, trades and drug addictions, alcohol problems. Having said all that, the Court in this case due to the number of convictions, the number of probation violations which resulted in revocations, find that the aggravating circumstances outweigh the mitigating circumstances in this matter. The Court also would note that it appears that a period of incarceration may be necessary because that's the only time that [Whaley] does things to improve himself.

Transcript at 414. Thus, the trial court found one mitigator—Whaley's efforts to improve his life while in jail—and two aggravators—Whaley's criminal history and probation revocations.

▮▮ Whaley argues that the trial court also used the fact that he only improves himself while in jail as an aggravator and that this was improper under *Blakely.*[10]

However, from the record it does not appear that the trial court used this factor as an aggravator. If the trial court did use this factor as an aggravator, it is impermissible as a separate aggravator under *Blakely.* In *Morgan v. State,* the Indiana Supreme Court characterized such statements as "legitimate observations about the weight to be given to facts appropriately noted by a judge alone under *Blakely.*" *Morgan v. State,* 829 N.E.2d 12, 17 (Ind.2005). However, the Court held that such statements "cannot serve as separate aggravating circumstances." *Id.*

▮▮ "Even when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist." *Pickens v. State,* 767 N.E.2d 530, 535 (Ind.2002). However, we note that "the existence of an aggravator does not relieve trial or appellate judges from the obligation to consider what weight to assign a particular aggravator and to balance the aggravators and mitigators." *Trusley,* 829 N.E.2d at 927. "Where a trial court has used an erroneous aggravator, . . . the court on appeal can nevertheless affirm the sentence if it can say with confidence that the same sentence is appropriate without it." *Witmer v. State,* 800 N.E.2d 571, 572–573 (Ind.2003). Even after excluding the improper aggravator, two significant aggravators, i.e., Whaley's criminal history and probation revocations, and one mitigator, i.e., Whaley's improvement of his life in jail, remain. Whaley does not challenge the remaining aggravators.[11]

---

**10.** The State argues that Whaley waived his *Blakely* claim by failing to object based upon *Blakely* at the sentencing hearing. The Indiana Supreme Court recently rejected this argument in *Kincaid v. State,* 837 N.E.2d 1008, 1010 (Ind.2005).

**11.** Whaley does suggest that the four prior convictions used to establish his status as an

habitual offender and habitual substance offender should not have been considered in his criminal history aggravator. Because we have vacated the habitual substance offender enhancement, Whaley's argument concerns only his prior convictions for attempted auto theft and resisting law enforcement. Whaley has a significant number of convictions other

Whaley's criminal history is significant and lengthy. In 1990, as a juvenile,[12] Whaley was found to be a delinquent for committing acts that would have been burglary as a class B felony and theft as a class D felony if committed by an adult. While on probation for the burglary and theft adjudications, Whaley attacked a woman at knifepoint and was adjudicated a delinquent for committing acts that would be attempted robbery as a class C felony and battery with a deadly weapon as a class C felony if committed by an adult. As a result, Whaley was sent to the Indiana Boys School. Additionally, Whaley was found to be driving with a suspended license as a class A misdemeanor in 1992. As an adult, Whaley was convicted of possession of alcohol by a minor as a class C misdemeanor in 1993. In 1994, he was convicted of conspiracy to commit possession of cocaine as a class C felony and carrying a handgun without a license as a class A misdemeanor. He was sentenced to four years suspended and two years on probation. His probation was revoked, and he was incarcerated in the Indiana Department of Correction. In 1994, Whaley was convicted of driving while suspended as a class A misdemeanor, and in 1995, he was convicted of public intoxication as a class B misdemeanor. In 1996, Whaley was convicted of driving while suspended as a class A misdemeanor and possession of marijuana as a class A misdemeanor. In 1998, he was convicted of operating a vehicle while suspended as an habitual traffic violator. Whaley violated his probation and was unsatisfactorily discharged. In 1999, Whaley was convicted of attempted auto theft as a class D felony,[13] and he was sentenced to 550 days in the Indiana Department of Correction and probation, which he violated. In 1999, Whaley was found guilty of resisting law enforcement as a class A misdemeanor. In 2000, he was again convicted of resisting law enforcement as a class D felony.[14] He received one year in the Indiana Department of Correction and probation, which was revoked. In 2002, he was convicted of driving while suspended as a class A misdemeanor and received 240 days in jail and 121 days of probation. Whaley was twenty-eight years old at the time of the instant offense.

Given Whaley's extensive criminal history and history of probation violations and the single minor mitigating factor, we can say with confidence that the trial court would have imposed the same sentences on the remaining convictions even without the improper aggravating factor.[15] *See, e.g., McCann v. State*, 749

than those two prior convictions. Thus, his sentence was not aggravated solely because of the prior convictions supporting the habitual offender determination. *See, e.g., Hall v. State*, 769 N.E.2d 250, 254–255 (Ind.Ct.App. 2002) (affirming the defendant's sentence where his sentence enhancement was supported by valid aggravating circumstances independent of his status as a habitual offender).

12. The Indiana Supreme Court recently held in *Ryle v. State*, 842 N.E.2d 320 (Ind.2005), that "juvenile adjudications are an exception to the *Apprendi* requirement that all facts used to enhance a sentence over the statutory max-

imum must be found by a jury beyond a reasonable doubt."

13. This conviction was used to support the habitual offender enhancement.

14. This conviction was used to support the habitual offender enhancement.

15. Whaley also argues that his sentences violate Article I, § 16 and Article I, § 18 of the Indiana Constitution. However, Whaley fails to make a cogent argument in support of the assertion. Failure to put forth a cogent argument acts as a waiver of the issue on appeal. *Davenport v. State*, 734 N.E.2d 622, 623–624 (Ind.Ct.App.2000), *trans. denied*. Thus, Whaley has waived the issue on appeal.

N.E.2d 1116, 1121 (Ind.2001) (holding that the court could say with confidence that the trial court would have imposed the same sentence where one of the aggravating circumstances was improper, there were no mitigating circumstances, and there were three other valid aggravating circumstances, including the defendant's criminal history).

In summary, we affirm Whaley's convictions for dealing in cocaine as a class A felony, two counts of resisting law enforcement as class D felonies, and his status as an habitual offender, we reverse Whaley's conviction for resisting law enforcement as a class C felony and his status as an habitual substance offender, and we remand for resentencing consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

DARDEN and BAILEY, JJ., concur.