## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2015, 5:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dennis William Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 14, 2015

Court of Appeals Case No.
49A02-1502-CR-83

Appeal from the Marion Superior
Court

The Honorable Christina R.
Klineman, Judge

Cause No. 49G17-1410-F6-48958

**Brown, Judge.**

[1] Dennis William Smith appeals his conviction for resisting law enforcement causing bodily injury as a level 6 felony. Smith raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

[2] On October 24, 2014, Indianapolis Metropolitan Police Officers Mark Decker and Chris Marcum were dispatched to a residence and were met at the door by Latonya Williams. The officers walked up the stairs to a bedroom where they observed Smith and Teiyonna Jenkins sitting on the bed. Officer Decker asked Smith for his name, and Smith identified himself. Officer Decker contacted his control operator and confirmed there was a no contact order prohibiting Smith from having contact with Williams or Jenkins.

[3] Officer Decker ordered Smith to stand up to be placed under arrest for invasion of privacy. Smith refused, and the officers grabbed him by the arms and pulled him up. After about "thirty seconds of manual manipulation with the elbow," the officers were able to place Smith's hands behind his back and handcuff him. Transcript at 24. Smith "then dropped," and the officers picked him up and carried him through the hallway to the stairs. *Id.* At the top of the stairs, Smith wrapped one leg around Officer Marcum's leg and his other leg around Officer Marcum's waist, and the officers pried him off of Officer Marcum and attempted to carry him down the stairs by the arms. Smith then reached his leg out and wrapped it around the top spindle of the banister. The officers called for a third officer, and Officer Kenny Greer arrived to assist. One of the officers

grabbed the upper portion of Smith's body and each of the other two officers grabbed one of Smith's legs, and they were able to extricate him away from the banister area. The officers asked Smith several times to walk down the stairs and he refused. Officer Decker grabbed one of Smith's legs, the other officers had his arms, and they started to carry Smith down the stairs. Smith "threw his leg through another spindle," at that point Officer Decker "had to pull Smith's leg out from the spindle," and in doing so Officer Decker "jerked [his] knee." *Id.* at 26. The officers were able to remove Smith from the spindle on the stairs, take him down to the living room, and place him on his stomach and place him in leg shackles.

[4] The State charged Smith with resisting law enforcement as a level 6 felony and two counts of invasion of privacy as class A misdemeanors. The State presented the testimony of Officer Decker and Officer Marcum at Smith's bench trial. When asked what happened when the officers were carrying Smith down the stairs, Officer Decker testified: "He threw his leg through another spindle, and at that point, uh, I had to pull his leg out from the spindle, and I uh, jerked m[y] knee." *Id.* Officer Decker indicated he experienced pain and that he suffered swelling and that "it took about a week for the swelling to go down." *Id.* at 27. On cross-examination, Officer Decker indicated that while the officers were carrying Smith down the stairs he again placed his legs in between some spindles on the staircase. When asked "it took some effort to get his leg out of there," Officer Decker responded affirmatively, and when asked "[a]nd you were the officer who tried to pull the leg out, is that right," Officer

Decker answered "[t]hat's correct." *Id.* at 30. When asked "[y]ou said that when you pulled his leg out, you jerked your knee," Officer Decker replied, "[y]eah, my right knee." *Id.* When asked "[t]here's no point at which Mr. Smith wrapped his legs around you," Officer Decker stated "[n]o." *Id.* at 30-31.

[5] After the State rested, Smith moved to dismiss the charges under Ind. Trial Rule 41(B). Defense counsel argued that there was "no causal link between what Mr. Smith is doing and the injury" to Officer Decker and that "there would have to be an assumption made that [] it was Mr. Smith inflicting that jerk on Officer Decker's own knee." *Id.* at 41. Defense counsel argued Officer Decker "jerked his own knee in the process of carrying [Smith] down stairs, and pulling the leg out from between the spindles." *Id.* at 42-43. Defense counsel also argued in part that the State failed to provide evidence of the people identified in the no contact order. The prosecutor argued that, "but for [Smith's] actions, Officer Decker wouldn't have twerked his knee" and that Officer Decker had to physically remove Smith from the spindle to take him down the steps. *Id.* at 43. The court denied Smith's motion as to the charge of resisting law enforcement and granted the motion as to the invasion of privacy charges on the basis the State could not prove that Smith was aware of the no contact order. The court found Smith guilty of resisting law enforcement as a level 6 felony and sentenced him to 270 days to be served consecutive to a sentence under another cause.

## Discussion

The issue is whether the evidence is sufficient to sustain Smith's conviction for resisting law enforcement as a level 6 felony. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

Ind. Code § 35-44.1-3-1(a) provides in part that "[a] person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor. . . ." Ind. Code § 35-44.1-3-1(b) provides that the offense is a level 6 felony if "while committing any offense described in subsection (a), the person draws or uses a deadly weapon, inflicts bodily injury on or otherwise causes bodily injury to another person, or operates a vehicle in a manner that creates a substantial risk of bodily injury to another person. . . ." "A person engages in conduct 'intentionally' if, when he engages in the

conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). The State alleged that Smith "did knowingly or intentionally forcibly resist, obstruct or interfere with Mark Decker and/or Christopher Marcum and/or Kenneth Greer, a law enforcement officer with the Indianapolis Metropolitan Police Department, while said officer was lawfully engaged in his duties as a law enforcement officer; and in committing said act the defendant inflicted bodily injury on or otherwise caused bodily injury to MARK DECKER, to-wit: pain and/or swelling and/or bruising . . . ." Appellant's Appendix at 14.

[8] Smith does not argue that he did not forcibly resist law enforcement. Smith contends that his conviction as a level 6 felony must be reduced to a class A misdemeanor because the State failed to prove that he inflicted or otherwise caused bodily injury to Officer Decker. He argues that Officer Decker testified he jerked his knee while pulling on Smith and that at no point did Smith wrap his legs around Officer Decker. He also argues that he took no actions toward Officer Decker, he was a passive part of the encounter, and that examples of inflicting bodily injury are kicking, hitting, swinging, and biting an officer, which did not occur here. Smith requests that his conviction as a level 6 felony be reduced to a class A misdemeanor.

[9] The State maintains that Smith's forcible resistance required officers to take action and, in taking that action, Officer Decker was injured. The State also argues that Smith was not a passive participant in the struggle.

[10] The record reveals that the State presented the testimony of Officer Decker that he was injured during the struggle to apprehend Smith. Because Smith refused to stand up from sitting on the bed, Officers Decker and Marcum grabbed him by the arms, pulled him up, and after about thirty seconds handcuffed him. Officers Decker and Marcum carried Smith through the hallway to the stairs, and Smith first wrapped one or both of his legs around Officer Marcum and later around the top spindle of the banister. After the officers asked Smith several times to walk down the stairs and he refused, Officer Decker grabbed one of Smith's legs, the other officers had his arms, and they started to carry Smith down the stairs. Smith then "threw his leg through another spindle." Transcript at 26. Officer Decker testified: "at that point, uh, I had to pull his leg out from the spindle, and I uh, jerked m[y] knee." *Id.* Officer Decker also indicated that "it took some effort to get his leg out of there." *Id.* at 30. As a result of jerking his knee, Officer Decker experienced pain and his knee became swollen for about a week.

[11] Based upon our review of the testimony most favorable to the conviction, we conclude that a reasonable trier of fact could have found that Smith inflicted or otherwise caused the bodily injury sustained by Officer Decker and that sufficient evidence exists from which the trier of fact could find Smith guilty beyond a reasonable doubt of resisting law enforcement as a level 6 felony. *See Whaley v. State*, 843 N.E.2d 1, 10-11 (Ind. Ct. App. 2006) (holding that the evidence was sufficient to sustain the defendant's convictions for two counts of resisting law enforcement as class D felonies where the defendant argued that

the officers inflicted the injuries upon themselves in attempting to handcuff him), *trans. denied*.[1]

## Conclusion

For the foregoing reasons, we affirm Smith's conviction for resisting law enforcement as a level 6 felony.

Affirmed.

Friedlander, J., and Riley, J., concur.

---

[1] Smith cites *Smith v. State*, 21 N.E.3d 121 (Ind. Ct. App. 2014), in support of his argument. In *Smith*, the police officer pulled the defendant's arm and took her to the ground, and as a result the officer suffered some scrapes on one of his knuckles and his fingertip area from being on the pavement. 21 N.E.3d 121, 123. This court held that the defendant did not inflict an injury on the officer or cause the officer's injury. *Id.* at 125. We noted that we "agree[d] with Smith that she was 'a passive part of the encounter' and 'took no actions toward' him." *Id.* We further stated that, "[a]s we do not believe a person who is thrown to the ground necessarily 'inflicts' or 'causes' an injury suffered by the person who throws her to the ground, we decline to follow *Whaley*," that the officer "chose to halt Smith's resistance by throwing her to the ground, and the officer was injured in so doing," and that, "[u]nlike *Whaley*, Smith did not create a scenario in which [the officer's] only option in handcuffing her was to remove her hands from a location in which he could not reach." *Id.* at 125-126. Here, Officer Decker did not throw Smith to the ground. Rather, he sustained his injury during the struggle to carry Smith down the stairway when Smith took the affirmative steps of throwing his leg through the spindles of the stairway, necessitating action by Officer Decker to get Smith's legs out of the spindles. Removing Smith's leg from between or around the spindles was the only option in taking him into custody, and Smith was not a passive part of the encounter. We find *Smith* to be distinguishable.